Jimmy FREEMAN, Appellant,

v.

STATE of Alaska, Appellee.

No. 1046.

Supreme Court of Alaska.

July 2, 1971.

were for contributing to the delinquency of a minor, and alleged that Freeman had engaged in indecent conduct toward several children, ranging in age from eleven to fifteen years. Freeman was arraigned on May 13, 1968, and pleaded not guilty on all counts. Trial by jury commenced on July 8, 1968.

At the outset of trial, one count of contributing to the delinquency of a minor was dismissed by the court. After the prosecution had presented its case-in-chief, the court granted a defense motion for judgment of acquittal on the first count of statutory rape. Thus, four counts of statutory rape and three counts of contributing to the delinquency of a minor were submitted to the jury. By a verdict reached on July 16, 1968, Freeman was acquitted of all three counts of contributing to the delinquency of a minor and of one count of statutory rape. However, the jury found Freeman guilty on the other three charges of statutory rape. Judgment of conviction was entered by the superior court in accordance with the jury verdict, and from this judgment Freeman appeals, raising two principal contentions of error.

George L. Gucker, Ketchikan, for appellant.

Benjamin O. Walters, Jr., Asst. Dist. Atty., Anchorage, G. Kent Edwards, Atty. Gen., Juneau, for appellee.

## OPINION

Before BONEY, C. J., DIMOND, RABINOWITZ and CONNOR, JJ., and FITZGERALD, Superior Court Judge.

BONEY, Chief Justice.

On May 9, 1968, a nine count indictment was filed in the superior court, Ketchikan, against Jimmy Freeman. The first five counts of the indictment charged Freeman with the statutory rape of his 13 year old step-daughter; the remaining four counts

### State's Failure to Prove Freeman's Age

After the state had completed presenting its case-in-chief at the trial below, the defense moved for acquittal on the first five counts of the indictment, arguing that the state had failed to prove, as required under our statutory rape provision,[1] that Freeman was sixteen years of age, or over. The state conceded that it had not offered any direct evidence of Freeman's age, but maintained that the testimony of several of its witnesses was sufficient to allow an inference that Freeman was more than sixteen years old, and, further, that the jury could properly consider Freeman's physical appearance at trial to determine his age. The court denied the motion for acquittal, and the trial proceeded. Freeman eventually took the stand in his own defense, and, in

1. A.S. 11.15.120 provides in part:
    A person who * * * being 16 years of age, carnally knows and abuses

a female person under 16 years of age, with her consent, is guilty of rape.

response to questioning on cross-examination, stated that he was thirty eight years old.

On appeal, Freeman reasserts his position below and argues that the trial court committed error in refusing to grant his motion for acquittal. The state contends, as it did at trial, that the testimony of its witnesses and the physical presence of Freeman provided a sufficient showing of age, despite the lack of any direct evidence.

■ Both parties on appeal, however, have overlooked our recent ruling in Martin v. City of Fairbanks,[2] which we believe to be dispositive under the present circumstances. There, in ruling on a question of sufficiency of evidence, we specifically refused to limit our consideration of the trial court record to evidence adduced prior to the appellant's motion for acquittal. We held that after a motion for acquittal has been made and denied,

> [i]f the defendant proceeds to put on his case, he risks curing any defects which may have existed in the prosecution's case-in-chief. On appeal the record as a whole is viewed, not just the prosecution's case-in-chief, regardless of when a motion of acquittal is made.[3]

Applying our ruling in *Martin* to the facts of the present case, we find no basis to Freeman's first claim of error. Assuming there was no proper showing of Freeman's age in the prosecution's case-in-chief, the evidentiary defect was corrected when Freeman testified that he was thirty eight years of age.

*Cross-Examination of Freeman*

Freeman's second claim of error presents more troublesome questions. For proof of the five counts of statutory rape, the state relied almost entirely upon the testimony of Freeman's thirteen year old step-daughter, who stated that she had submitted to sexual intercourse with Freeman on five separate occasions. Three other young girls, playmates of Freeman's step-daughter, testified concerning the charges of contributing to the delinquency of a minor. Each girl related a separate instance in which Freeman allegedly attempted to kiss, fondle or indecently hold her. In each instance, the improper behavior purportedly occurred in the Freeman home. The testimony of Freeman's step-daughter provided corroboration as to each of these incidents.

With a series of defense witnesses including his own wife, Freeman attemped to discredit the stories of the state's witnesses by showing that he could not have, or that he actually had not, engaged in the acts charged. Freeman also took the stand in his own defense and denied all charges of statutory rape, and all charges of indecent behavior involving his step-daughter's friends.

In an attempt to bolster his defense, Freeman additionally sought to prove that he was not the type of person who would commit the kind of offenses charged against him. To this end, Freeman was allowed, over the objections of the state, to interrupt his own testimony on direct examination by calling two expert witnesses to testify as to his mental characteristics.[4] Freeman first called to the stand Dr. Edward G. Goodrich, a clinical psychologist from Washington. Dr. Goodrich stated that Freeman had been referred to him by a

---

2. 456 P.2d 462 (Alaska 1969).

3. *Id.* at 464. *See also* our more recent holding in Gray v. State, 463 P.2d 897, 906, at n. 12 (Alaska 1970).

4. The trial court was apparently guided in admitting this expert testimony by the decision of the Supreme Court of California in People v. Jones, 42 Cal.2d 219, 266 P.2d 38 (1954), and by an article commenting favorably thereon, Curran, Expert Psychiatric Evidence of Personal-ity Traits, 103 U.Pa.L.Rev. 999 (1955). In Jones, the court ruled that psychiatric evidence of the mental characteristics of an accused was erroneously excluded where the accused had been charged with performing lewd acts upon a nine year old child. For adverse comment on the Jones decision, see Falknor & Steffan, Evidence of Character: From the "Crucible of the Community" to the "Couch of the Psychiatrist", 102 U.Pa.L.Rev. 980 (1954).

psychiatrist for testing, and that he, Dr. Goodrich, had interviewed Freeman and had administered a battery of psychological tests. On the basis of his interview and the results of the psychological tests, Dr. Goodrich testified that Freeman was not a sexual psychopath, and that the probability of Freeman's committing the type of offenses on charge was low. On cross-examination Dr. Goodrich was asked whether his opinion of Freeman's personality would be altered if he learned that Freeman had, at the age of 18 attempted to rape a 14 year old girl; Dr. Goodrich replied that his opinion would not change.

Next to testify was Dr. Ralph M. Stolzheise, a Washington psychiatrist. Dr. Stolzheise testified that at the request of Freeman's counsel he had examined Freeman. He stated that his examination had consisted of an initial interview, after which he had referred Freeman to Dr. Goodrich for testing, and a subsequent interview, conducted after the results of the tests were available. In the opinion of Dr. Stolzheise, there was nothing to indicate that Freeman's personality was such as to involve him in the type of crimes charged. From his examination, Dr. Stolzheise concluded that it was "highly improbable" that Freeman committed the crimes of which he was accused.

With the cross-examination of Dr. Stolzheise, the seeds of the controversy which engendered this appeal were planted. The district attorney initially inquired whether Dr. Stolzheise's opinion of Free-

man's character would be modified if Freeman had been involved in prior conduct similar to that charged. Dr. Stolzheise answered that his opinion would change somewhat but that he was unaware of Freeman's involvement in any similar incidents. At this point, the district attorney handed Dr. Stolzheise a document, consisting of a sheriff's report and two handwritten statements, which he requested Dr. Stolzheise to read. The district attorney was allowed to state that the document was a certified copy of a criminal record describing Freeman's prior conviction for the crime of contributing to the delinquency of a minor, or indecent liberties.[5] After Dr. Stolzheise finished reading these materials, the district attorney resumed his questioning. Dr. Stolzheise stated that Freeman had made some mention of the prior incident, but that he had not gone into some of the details contained in the statements.

Because the incident described had occurred twenty years prior to the date of trial, Dr. Stolzheise expressed some doubt as to its significance. Nonetheless, he testified that he would give it some weight, and that if the details contained in the statements were true, his opinion would be modified to a certain degree. However, Dr. Stolzheise insisted that additional consultation would be required before he could determine the proper significance to attribute to the incident. Having elicited this last statement from the witness, the district attorney promptly moved to strike Dr. Stolzheise's testimony. However, the

---

5. The criminal record, certified by the Sheriff of Skagit County, Washington, was not introduced into evidence, but simply handed to Dr. Stolzheise for his perusal. The sheriff's report, dated July 26, 1948, charged James Freeman with the offense of contributing to the delinquency of a minor, or indecent liberties. Freeman's age was stated as 18, and the age of his putative victim was listed as 14. The report indicated that Freeman pleaded guilty, was found guilty, and given a suspended thirty day sentence.

The two handwritten statements accompanying the sheriff's report purported to be those of Freeman and the victim

of his attack. According to Freeman's statement, on July 11, 1948, he gave two girls a ride home from church. Freeman dropped one girl off at her home. Before reaching the home of the second girl, however, Freeman pulled off the main road and stopped his car. He asked the girl if she "would give me a little". Although the girl resisted, he proceeded to make various lewd advances. Eventually, Freeman gave up his efforts and drove the girl home. The statement of Freeman's alleged victim, though it included certain details not mentioned in the other statement, essentially confirmed the account supposedly given by Freeman.

court denied the state's motion, ruling that Dr. Stolzheise's testimony on cross-examination could be considered by the jury in deciding the amount of weight to give to his testimony on direct.

When Dr. Stolzheise had completed his testimony, Freeman resumed the witness stand and his direct examination continued. He admitted having been convicted of contributing to the delinquency of a minor when he was 18 years old, but stated that he did not remember the age of the girl involved in the crime. Freeman similarly admitted conviction of petit larceny a short time after his 1948 offense. Although he went into detail concerning the circumstances of this second crime, at no time did Freeman dwell on the events that led to his 1948 conviction for contributing to the delinquency of a minor.

On cross-examination, the district attorney focused on the issue of Freeman's personality. The district attorney inquired into Freeman's prior conviction for contributing to the delinquency of a minor. Freeman was asked whether he remembered the names of the two girls who had been involved in the 1948 incident, and he responded that he did. The district attorney next handed Freeman a copy of the record of his prior conviction—the same documents that had previously been given to Dr. Stolzheise—and Freeman was asked to identify as his the signature on one of the two handwritten statements. Freeman did not positively identify the signature; he said that it might have been his, although he was unsure because he did not usually sign his name in the manner that it was signed on the statement.[6] In response to further questioning, Freeman stated that he remembered the incident leading up to this 1948 conviction, but that he did not recall signing the state-ment handed to him by the district attorney.

The district attorney then embarked upon a protracted interrogation concerning the factual circumstances surrounding Freeman's 1948 conviction. Numerous questions were permitted about the acts for which Freeman had been convicted. Many of these questions were specific in detail, and phrased directly from the statements supposedly written by Freeman and his victim. In effect, through this line of questioning, the jury was presented with an assortment of some of the most vivid and sordid details described in the statements of Freeman's alleged prior misconduct. The cross-examination culminated with an attempt on the part of the district attorney to introduce into evidence the entire record of Freeman's 1948 conviction, including the sheriff's report, the handwritten statement ostensibly made by Freeman, and the statement of the victim of his alleged attack. The court ruled that the record was hearsay and therefore inadmissible.

The interrogation of Freeman concerning his prior offense was conducted over repeated objections of defense counsel which should have alerted the trial judge to the possible inadmissibility of his line of questioning. Freeman's responses to the prosecutor's interrogation were varied. He flatly denied the prosecutor's allegations as to certain details of the 1948 incident; at other times, he claimed that he could not remember specifically alleged statements or acts. Freeman also attempted to explain that he had been wrongfully accused of the 1948 crime, and that the father of his alleged victim had even apologized to him after his conviction.

In this manner Freeman's trial on the charges brought against him in the indictment was suddenly, and for an appreciable

---

6. At this stage of the proceedings, the state introduced into evidence a copy of a "Transcript of Judgment" from Freeman's 1948 conviction. This document recited that Freeman had been charged with contributing to the delinquency of a minor, that he had been found guilty by a justice of the peace without a jury, and that he had been given a suspended thirty day sentence and ordered to pay costs of $2.50. It further indicated that the suspension of Freeman's sentence was subsequently revoked when he was convicted of a crime in another court.

length of time, in effect transformed into a trial on the issue of his prior misconduct. The state, in its cross-examination, sought diligently to prove the lurid details of the 1948 incident, while Freeman, forced to defend against these unexpected accusations, resisted tenaciously. It is the propriety of this trial within a trial which is questioned on appeal.

Freeman argues that the trial court erroneously permitted the state to cross-examine on the specific nature of his previous misconduct. He contends that "to allow such cross-examination * * * can do nothing more than prejudice the appellant before the jury. It certainly distracted the jury from the issues of this case." The state counters by asserting that its references on cross-examination to Freeman's prior offense were justifiable on any one of three alternative theories.[7]

A. *Evidence of the prior offenses as rebuttal to the psychiatric evidence of Freeman's character.*

The state contends first that by calling expert witnesses to testify that he was not a sexual psychopath and that he was not the type of person to commit the offenses charged, Freeman placed his character in issue, thereby opening the door to rebuttal by the state. Thus, it is argued that proof of the details of Freeman's prior offense was relevant and admissible in rebuttal.

The determination whether proof of Freeman's prior offense was permissible rebuttal evidence hinges initially upon the nature of the evidence which was presumably to be rebutted, namely, the testimony of Dr. Goodrich and Dr. Stolzheise concerning Freeman's mental characteristics. Freeman apparently desired to raise an inference that, if he did not possess the type of personality which would dispose him to commit the acts with which he was charged, then in fact he probably did not commit them. In order to achieve this goal Freeman chose to adduce expert opinion testimony which would show that his mental condition as to a trait particularly relevant to the crimes charged was unblemished. For this purpose, Freeman was allowed to call two expert witnesses; both testified that in their opinions Freeman was not a sexual psychopath and was unlikely to have committed offenses such as the ones charged. Thus, in summary, Freeman used opinion testimony in order to establish his good character; the proof of his good character was, in turn, intended to serve as circumstantial evidence of his conduct.[8]

Although it is commonly acknowledged that a person's character will frequently be relevant to the issue of his conduct on a particular occasion, character evidence is normally inadmissible for this purpose. Thus, in criminal cases, the state is as a rule forbidden from attempting to establish the guilt of the accused by initiating an attack on his character. Yet the rule precluding use of character evidence to show conduct has traditionally not been applied to the accused in criminal cases. It has consistently been held that the accused may, in an effort to prove his innocence, seek to establish his good character.

7. The state does concede that under our ruling in Gafford v. State, 440 P.2d 405, 413 (Alaska 1968), its cross-examination would have been inadmissible if its only purpose had been to impeach Freeman's credibility.

8. Proof of character as circumstantial evidence of conduct is one of the most widely recognized applications of character evidence. *See* C. McCormick, The Law of Evidence §§ 153, 155, 158 (1954). It appears to be uniformly accepted that psychiatric evidence showing that an individual accused of sexually deviant misconduct is not a sexual psychopath should properly be regarded to be character evidence. *See* People v. Spigno, 156 Cal. App.2d 279, 319 P.2d 458 (1957) ; State v. Cypher, 92 Idaho 159, 438 P.2d 904, 916 (1968) ; State v. Sinnott, 24 N.J. 408, 132 A.2d 298, 304–311 (1957) ; Ward v. Turner, 12 Utah 2d 310, 366 P.2d 72, 74 (1961) ; State v. Bromley, 72 Wash.2d 150, 432 P.2d 568 (1967). *See also* Curran, *supra* note 4; Falknor & Steffan, *supra* note 4; and Deering's Calif. Ev. Code Ann. § 1102, at 9 (1966) (Law Revision Commission comment).

The accused need not testify before seeking to prove his good character. However, general good character may not usually be shown; instead, proof must be confined to particular traits of character relevant to the conduct with which the accused has been charged. Moreover, the evidence must bear on the character of the accused at the time of the alleged acts.[9] The exception which allows the accused to submit evidence of his good character is almost universally observed in the United States, and has long been considered a fundamental protection.[10]

■ A rule equally well established is that by presenting evidence of his good character the accused opens the door to rebuttal. Hence, the state may seek to show, either through cross-examination of defense witnesses or by calling witnesses of its own, that the accused's professions to good character are ill-founded.[11] In presenting its rebuttal the state is restricted to showing bad character for the particular trait, or traits, of character initially focused upon by the accused.[12] To this extent, then, in this case the state is correct in maintaining that Freeman, by presenting psychiatric testimony, opened the door to rebuttal on the issue of his propensity to commit the type of crimes with which he was charged. However, this observation offers no facile solution, for the difficult question is not whether the state was entitled to rebuttal, but rather the extent to which it could properly go in its endeavor to counter the evidence of Freeman's good character.[13] This raises the question of the permissible methods of proving character.

9. *See, generally* Michelson v. United States, 335 U.S. 469, 475–480, 69 S.Ct. 213, 93 L.Ed. 168, 173–176 (1948) ; C. McCormick, *supra* note 8, at §§ 155, 157–58; H. Underhill, Criminal Evidence § 192 (Herrick rev. 5th ed. 1956) ; 1. R. Anderson, Wharton's Criminal Evidence § 221 (12th ed. 1955) ; 1 J. Wigmore, Evidence §§ 52–60 (3d ed. 1940).

10. *See* Advisory Committee on Rules of Evidence, Preliminary Draft of Proposed Rules of Evidence for the United States District Courts and Magistrates r. 4–04, 46 F.R.D. 161, 229 (March 1969) (Advisory Committee's note).

The question whether an accused is entitled to introduce evidence of his good character is one of first impression in Alaska. Alaska R.Civ.P. 43, which delineates our basic procedural rules of evidence in civil matters, is made applicable in its entirety to criminal cases by Alaska R. Crim.P. 26(a). Alaska R. Civ.P. 43(g) (11) [d] provides, in part, that "[e]vidence of the good character of a party is not admissible unless the issue in the action involves his character." A strict reading of this provision might lead to the conclusion that an accused may not introduce evidence of his good character in a criminal case.

Without doubt, R.Civ.P. 43(g) (11) [d] correctly states the generally prevailing view with regard to admission of character evidence in civil cases. This is indicated by the source from which the rule was apparently drafted. *See* 32 C.J.S. Evidence § 423 (1942). However, this rule has never, to our knowledge, been applied in criminal cases to preclude the accused from showing that his character is good. We could, of course, indulge in the fiction that the character of the accused is at issue in every criminal case and that therefore the accused is entitled under rule 43(g) (11) [d] to prove his good character. Yet we do not think that such a devious course is necessary. In view of the fundamental nature and universal acceptance of the exception which allows the accused to prove his good character, and in view of the fact that the language of our rule is so clearly addressed only to civil matters, we simply hold that the portion of R.Civ.P. 43(g) (11) [d] quoted above is inapplicable in criminal cases.

11. Michelson v. United States, 335 U.S. 469, 478–479, 69 S.Ct. 213, 93 L.Ed. 168, 175–176 (1948) ; 1 R. Anderson, *supra* note 9, § 221, at 456–57 ; 1 J. Wigmore, *supra* note 9, at § 58.

12. 1 H. Underhill, *supra* note 9.

13. As Justice Rutledge stated in his dissenting opinion in Michelson v. United States, 335 U.S. 469, 492, 69 S.Ct. 213, 226, 93 L.Ed. 168, 182 (1948) :

Obviously rebuttal there should be, when the defendant has opened a line of inquiry closed to the prosecution and has sought to gain advantage by proof which it has had no chance to counteract. But the question of how the rebuttal shall be made presents the difficult problem.

There are three possible methods by which a person's character can be proven: first, witnesses can be called to testify as to the person's reputation in his community; second, witnesses can be called to testify from their own personal knowledge of the person as to their opinion of his character; third, testimony and evidence can be adduced to prove specific acts or conduct tending to reflect on the person's character.

Although the issue has not previously been considered in Alaska, of these three commonly recognized methods of proving character, only reputation evidence is permitted in most jurisdictions.[14] However, the practice which thus favors reputation over opinion evidence as a means of proving character has been subjected to severe criticism by scholars.[15] This criticism reveals that the rule permitting evidence of community reputation but excluding testimony based on a witness' personal knowledge of an individual's character was the child of an historical misunderstanding. The widespread acceptance of the rule cannot be accounted for rationally; rather, as one commentator has observed, "[o]nce a rule is established it often grows because it exists."[16]

■ Moreover, it has been persuasively argued that community reputation is generally the weakest and least reliable form of character evidence. It has been pointed out that opinion evidence is usually more probative of the issue of a person's character than community reputation, while, at the same time, it is no more time consuming or prejudicial. It has further been demonstrated that skillful use of the accepted techniques for questioning a witness about reputation will, in the final analysis, achieve the same result that would be achieved by simpler and more direct questions calling for the personal opinion of the witness. Accordingly, the rule which permits reputation but requires exclusion of opinion evidence appears to do no more than preserve a hollow and confusing ritual, fraught with pitfalls for the inexperienced and the unwary. We can perceive no valid reason for the perpetuation of such a rule. We hold, therefore, that in Alaska proof of a person's character may properly be accomplished by means of either reputation or opinion testimony.[17]

---

14. C. McCormick, *supra* note 8, at § 158; 1 H. Underhill, *supra* note 9, at § 197.

15. *See*, for example, Ladd, Techniques and Theory of Character Testimony, 24 Iowa L.Rev. 498, 509–13 (1939) ; 7 J. Wigmore, *supra* note 9, at § 1986. As Professor Wigmore states in his treatise:
The Anglo-American rules of evidence have occasionally taken some curious twistings in the course of their development; but they have never done anything so curious in the way of shutting out evidential light as when they decided to exclude the person who knows as much as humanly can be known about the character of another, and have still admitted the second-hand, irresponsible product of multiplied guesses and gossip which we term 'reputation'.
*Id.* § 1986, at 167 (footnote omitted).
Several codes have recommended that opinion testimony be allowed to prove character. *See, e. g.*, Model Code of Evidence r. 306 (1942) ; Uniform Rules of Evidence r. 46, 47 (1953) ; Advisory Committee on Rules of Evidence, Preliminary Draft of Proposed Rules of Evidence for the United States District Courts and Magistrates r. 4–05, 46 F.R.D. 161, 231 (March 1969). Use of opinion testimony has recently been approved by statute in California. Deering's Calif. Ev. Code Ann. § 1102 (1966). Moreover, some courts have upheld the right of the accused to prove his good character through opinion evidence. *See, e. g.*, State v. Hobbs, 172 N.W.2d 268, 271 (Iowa 1969). *See also* Ladd, *supra* at 512–13.

16. Ladd, *supra* note 15, at 510.

17. There has been considerable dispute over the admissibility of psychiatric testimony such as that offered by Freeman in this case. *See, e. g.*, People v. Jones, 42 Cal. 2d 219, 266 P.2d 38 (1954) ; Falknor & Steffan, *supra* note 4 ; Curran, *supra* note 4. *See also* cases cited *supra* note 8. The problem of admissibility of such evidence, however, is considerably simplified once the initial concession is made to the admissibility of opinion testimony to prove character; for the testimony of a psychiatrist is expert opinion evidence, and as such, it is neither more nor less

While there has been much debate concerning the wisdom of excluding opinion evidence, the authorities have consistently agreed that proof of specific instances of good or bad conduct should be inadmissible for the purpose of proving character.[18] Proof of character by evidence of specific acts is, compared with either reputation or opinion evidence, time consuming and distracting. Such evidence, furthermore, will frequently create the danger of unfair surprise. Evidence of specific acts is especially pernicious in the case where it is employed to show the bad character of the accused in a criminal prosecution. Faced with a showing that the accused has committed reprehensible acts in the past, the jury is simply likely to conclude that

he is a bad man, and that he deserves to be punished regardless of whether or not he actually committed the offense with which he has been charged.[19] It is this high potential for arousing jury prejudice which has led to the long established rule that evidence of prior misconduct by the accused is inadmissible if its only purpose is to show that he is a man of bad character, and that he is therefore more likely to have committed the offense charged. In the words of Professor Wigmore:

> The law here declares a general and absolute rule of exclusion. It is forbidden, in showing that the defendant has not the good character which he affirms, to resort to *particular acts of misconduct* by him.[20]

than a species of opinion evidence. Testimony of expert witnesses in criminal cases is certainly not novel, and is specifically contemplated under Alaska R. Crim.P. 28. Similarly, the use of psychiatrists as experts in various aspects of criminal cases has been widely accepted. *See, e. g.*, Dieden & Gasparich, Psychiatric Evidence and Full Disclosure in Criminal Trials, 52 Calif.L.Rev. 543 (1954); Curran *supra* note 4; and Note, Psychiatric Evaluation of the Mentally Abnormal Witness, 59 Yale L.J. 1324 (1950).

The admissibility of psychiatric testimony in cases such as the present case should thus be left to the sound discretion of the trial court. In the exercise of its discretion, the trial court should be guided by the same principles which apply to other cases involving expert testimony. Accordingly, the court should take into consideration such factors as the qualifications of the psychiatrist, the opportunity which he has had to examine the accused, and the nature and extent of his examination. Moreover, the court should take into account the type of offense with which the accused has been charged and the particular trait of character to which the psychiatrist will address himself.

The trial court possesses considerable latitude and flexibility in deciding the admissibility of such evidence. Where it is deemed necessary, a hearing may be held out of the presence of the jury to preview the proposed testimony and rule upon its admissibility. Such a hearing will also serve the salutary purpose of enabling the court to properly define and

limit the areas to be covered by the defense witness, and to determine in advance the permissible scope of rebuttal. To avoid surprise and prevent disruption during the course of the trial, defense counsel seeking to introduce psychiatric testimony should, of course, alert the court as early as practicable to the possibility that such evidence will be offered. In the event of a request, the court may grant a reasonable continuance to allow presentation of rebuttal psychiatric evidence by the state. Alternatively, the court may order the appointment of an impartial expert.

It must always be remembered, however, that the ultimate inquiry in deciding the admissibility of expert testimony is whether the expert's testimony will be useful to the finder of fact. Crawford v. Rogers, 406 P.2d 189, 192 & n. 5 (Alaska 1965). *See generally*, Ladd, Expert Testimony, 5 Vand.L.Rev. 414 (1954).

18. C. McCormick, *supra* note 8, at § 158; 1 H. Underhill, *supra* note 9, at § 197; 1 R. Anderson, *supra* note 9, at § 222.

19. 1 J. Wigmore, *supra* note 9, at § 194.

20. *Id.* § 193, at 643 (emphasis in the original). This general rule of exclusion is recognized in numerous cases. *See, e. g.*, Spencer v. Texas, 385 U.S. 554, 572–575, 87 S.Ct. 648, 17 L.Ed.2d 606, 619–621 (1967) (dissenting and concurring opinion of Chief Justice Warren); Lane v. Warden, 320 F.2d 179, 181–182 (4th Cir. 1963); Nicholi v. State, 451 P.2d 351, 357 (Alaska 1969); Watson v. State, 387 P.2d 289, 292–293 (Alaska 1963).

For the purposes of the present case, it is crucial to underscore the applicability of this exclusionary doctrine to the prosecution's rebuttal of evidence of good character put on by the accused. As Professor Wigmore states:

The practical bearing of the rule [excluding evidence of prior misconduct introduced to establish the character of the accused], it is to be noted, is to exclude this class of facts *on rebuttal by the prosecution;* for use of bad character in any form is already forbidden to the prosecution until the defendant has opened the subject.[21]

■ As we have already noted, when the accused affirmatively asserts his good character the state is, in fairness, entitled to rebut. But the door to rebuttal once opened must not be broadened into a gateway to jury prejudice. Hence, it is well settled that the state, in presenting its rebuttal, is limited to the use of reputation or opinion evidence; specific instances of prior or subsequent misconduct may not be shown.

The case of Sun B. Lee v. United State,[22] furnishes an excellent example, There, the prosecution had been allowed at trial to show that the defendant had previously been implicated in criminal activity similar to that for which he was being tried. The defendant was convicted, and appealed, claiming that admission of the evidence of his prior misconduct was error. On appeal, the prosecution contended that the defendant had placed his character in issue at trial, and that the evidence of his prior misconduct was permissible in rebuttal. The court explicitly rejected this argument, holding:

Nor are we persuaded, as the government contends, that the appellant 'opened the door' to the admission of evidence of this nature. * * * For it is well settled that, even where a defendant becomes a witness in a criminal case and does put his character in issue, the prosecution may not then discredit his character by proof of specific acts of misconduct.[23]

■ The foregoing discussion makes it readily apparent that in this case the state's insistent inquiry into the details of Freeman's prior conviction cannot be upheld on the theory that Freeman opened the door to the issue of his character. Through the testimony of Dr. Goodrich and Dr. Stolzheise, Freeman placed his character in issue; the state was entitled to rebut this evidence, either by showing Freeman's reputation in the community or by calling opinion witnesses—including experts such as the ones called by Freeman—to testify

21. 1 J. Wigmore, *supra* note 9, § 194, at 651, n. 6 (emphasis in the original).

22. 245 F.2d 322 (9th Cir. 1957).

23. *Id.* at 326. Numerous other federal and state cases echo the holding in Sun B. Lee. *See, e. g.,* United States v. Beno, 324 F.2d 582, 588 (2d Cir. 1963); Eley v. United States, 117 F.2d 526, 528 (6th Cir. 1941); Barber v. State, 95 Ga.App. 763, 98 S.E.2d 575 (1957); State v. Wyman, 270 A.2d 460, 461–462 (Me.1970); State v. Gress, 250 Minn. 337, 84 N.W.2d 616, 622–23 (1957); State v. Sauter, 125 Mont. 109, 232 P.2d 731, 733 (1950); Webb v. State, 311 P.2d 819, 822–823 (Crim.Ct.App. Okla.1957); Agee v. State, 172 Tex.Cr.R. 618, 361 S.W.2d 881 (1963); State v. Bromley, 72 Wash. 2d 150, 432 P.2d 568, 569–571 (1967); State v. Putzell, 40 Wash.2d 174, 242 P. 2d 180, 185 (1952).

An altogether different situation arises where the accused, instead of generally contending that his character is inconsistent with the type of offense with which he is charged, affirmatively denies ever having been in trouble, or makes specific claims as to his conduct on certain occasions in the past. In such cases, evidence of misconduct by the accused has frequently been held admissible in order to directly contradict the specific claims of the accused. *See, e. g.,* United States v. Bowe, 360 F.2d 1 (2d Cir. 1966); United States v. Beno, 324 F.2d 582, 588 (2d Cir. 1963); People v. Goff, 100 Cal. App.2d 166, 223 P.2d 27, 30 (1950); Molton v. People, 118 Colo. 147, 193 P.2d 271, 272–273 (1948); Folds v. State, 90 Ga.App. 849, 84 S.E.2d 584 (1954); State v. Hale, 21 Ohio App.2d 207, 256 N.E.2d 239 (1969); State v. Fiddler, 57 Wash.2d 815, 360 P.2d 155, 158 (1961).

as to their personal appraisal of Freeman's mental characteristics. The record does reveal that the state was not given prior notice of the fact that Freeman intended to adduce psychiatric evidence of his own good character. Yet this fact does not justify recourse to an improper line of examination. The state's cross-examination of Freeman as to the details of his 1948 conviction was not admissible as rebuttal evidence of Freeman's character.

B. *Evidence of Freeman's prior offense as independently relevant to the issue of his intent.*

■ The state's second theory of admissibility is that the proof of Freeman's prior misconduct was directly and independently relevant on the issue of his intent with regard to the three counts of contributing to the delinquency of a minor charged against him. Although evidence of prior misconduct is as a rule inadmissible to show that the accused has a propensity to commit crime, we have consistently ruled that such evidence may be admitted if it is relevant for some other purpose. For instance, in Watson v. State [24] we held:

> Evidence that reveals the commission of an offense other than that for which the defendant is being tried is inadmissible if it is relevant merely to show criminal disposition. But such evidence is admissible, even when it shows the defendant's prior trouble with the law, when it is relevant to prove some other material fact.

One of the most familiar instances in which evidence revealing the commission of another offense has been held admissible is when that evidence is relevant and necessary to show that the crime with which the accused is charged was committed with the requisite element of intent.[25]

■ It is normally required that in order to be admissible on the issue of intent the prior misconduct of the accused must be similar to the crime charged and not too remote in time. Additionally, the intent of the accused must actually be in issue.[26] This last requirement deserves emphasis; for it is a requirement of substance, not of form. Evidence of other offenses committed by the accused will always be potentially prejudicial; for this reason, before such evidence is admitted, care must be taken to ascertain whether it is actually necessary in the circumstances of the particular case. Manifestly, where there is no dispute as to the issue of the accused's intent, evidence going merely to intent will be superfluous, and its only possible effect will be a deleterious one. Thus, in the words of United States v. Fierson,[27]

> to justify admission into evidence of an accused's prior criminal acts to establish willfulness and intent, it is necessary that willfulness and intent be more than merely formal issues in the sense that the defendant is entitled to an instruction thereon.

While the question has not previously been ruled upon in Alaska, in other jurisdictions, evidence of prior sexual offenses committed by the accused has ordinarily been held to fall within the normal rules

---

24. 387 P.2d 289, 293 (Alaska 1963). For additional cases in which we have held evidence revealing the commission of other crimes admissible, see Nicholi v. State, 451 P.2d 351, 357 (Alaska 1969); Gafford v. State, 440 P.2d 405, 408 (Alaska 1968); Kugzruk v. State, 436 P.2d 962, 966–968 (Alaska 1968).

25. The various purposes for which evidence of prior crimes may be admitted are generally discussed in C. McCormick, *supra* note 8, at § 157; and 2 J. Wigmore, *supra* note 9, at §§ 300–416.

26. *See, e. g.,* United States v. Mancuso, 423 F.2d 23, 30 (5th Cir. 1970); United States v. Fierson, 419 F.2d 1020 (7th Cir. 1969); Matthews v. United States, 407 F.2d 1371, 1380–1382 (5th Cir. 1969); State v. Crowl, 135 Mont. 98, 337 P.2d 367 (1959).

27. 419 F.2d 1020, 1022–1023 (7th Cir. 1969). *See also* United States v. Dryden, 423 F.2d 1175, 1178 (5th Cir. 1970); Hamilton v. United States, 409 F.2d 928 (5th Cir. 1969); United States v. Klein, 340 F.2d 547 (2d Cir. 1965).

of admissibility; where such evidence was relevant on the issue of intent, it has been admitted.[28] Yet the law has also recognized that evidence of prior sexual misconduct is by its nature peculiarly apt to arouse the hostile sentiments of the jury. Consequently, courts have been particularly cautious in scrutinizing such evidence to assure, as a prerequisite to admissibility, that it is highly probative of the accused's intent and that the circumstances of the particular case are such as to demand specific proof of intent. Any doubt as to the relevance or necessity for such evidence has consistently been resolved in favor of the accused.[29]

Within the context of a sex related offense, the classic example of proper use of prior misconduct as proof of intent is where the accused admits the act charged, but claims to have had a benign intent. A good illustration is People v. Goff,[30] where it was held:

> The rule is that when a defendant, testifying in his own defense, acknowledges the physical touch of a child but asserts his innocent intent, he definitely places in issue the necessary element of intent and the prosecution may then introduce evidence that the defendant has committed similar offenses upon a person or persons other than the prosecuting witness in order to rebut the testimony of the defendant on a point material to the establishment of his guilt of the crime charged.

Although the rule stated in *Goff* will undoubtedly provide an accurate guide to admissibility in most cases of this nature, it should not be read inflexibly. Beyond the case where the accused admits a touching but denies culpable intent, there may arise cases where the acts charged are equivocal, and where there is a particularly close similarity and proximity between the facts of a prior offense and the facts of the offense charged. In such instances, the evidence of prior misconduct may be admissible despite the fact that the accused has not specifically raised the issue of intent.[31]

We are of the view that in this case the detailed proof of Freeman's 1948 conviction falls far short of meeting the requirements for admissibility on the issue of intent. It must be noted that the relevance of this evidence was, at best, questionable. The subject of the state's inquiry was an offense committed in 1948, almost twenty years prior to the offenses charged against Freeman. Freeman was apparently not represented by counsel at the time of his prior conviction.[32] Moreover, the nature of Freeman's prior offense substantially

28. 2 J. Wigmore, *supra* note 9, at §§ 357, 360. *See also* People v. Kelley, 66 Cal.2d 232, 57 Cal.Rptr. 363, 424 P.2d 947, 956 (1967).

29. *See, e. g.,* People v. Kelley, 66 Cal.2d 232, 57 Cal.Rptr. 363, 424 P.2d 947, 954 (1967).

30. 100 Cal.App.2d 166, 223 P.2d 27, 30 (1950). *See also* People v. Westek, 31 Cal.2d 469, 190 P.2d 9, 13–16 (1948); People v. Harrison, 46 Cal.App.2d 779, 117 P.2d 19 (1941).

31. *See* People v. Kelley, 66 Cal.2d 232, 57 Cal.Rptr. 363, 424 P.2d 947 (1967). In the Kelley case, the California Supreme Court gave thorough consideration to admissibility of proof of similar crimes on the issue of intent in sex related offenses. The holding in Kelley would apparently require that, unless the accused affirmatively places his intent in issue, proof of prior sexual offenses on the issue of intent must be restricted to cases where the acts charged are equivocal, and where the prior offenses are so similar as to reveal an ongoing system or plan. *See also* People v. Todd, 1 Cal.App.3d 547, 81 Cal. Rptr. 866, 869–70 (1969); People v. Cramer, 67 Cal.2d 126, 60 Cal.Rptr. 230, 429 P.2d 582 (Cal.1967).

32. We have recently intimated that evidence showing convictions of prior crimes which are too remote in time or were obtained without the accused having been afforded representation by counsel, will be inadmissible for impeachment purposes. Spaulding v. State, 481 P.2d 389 (Alaska 1971). This holding is in effect a recognition of the diminished probative force of such convictions.

differed from the offenses charged. As evidenced by the relatively light sentence given to Freeman in 1948, a distinction can be made between the case where an 18 year old boy makes indecent advances toward a 14 year old girl in his car, and the case where a 38 year old married man makes such advances toward the young playmates of his daughter in his own home.

Adding to the probative weakness of the evidence of Freeman's prior offense is the fact that specific proof of Freeman's intent was simply not vital in the circumstances of this case. It is, of course, not contended that the evidence of Freeman's prior conviction was relevant to establish his intent with regard to the charges of statutory rape. As to these charges, there is little doubt that if Freeman committed the alleged acts, he did so with the requisite element of intent. Thus, the ostensible relevance of the prior crimes evidence is confined to the three counts of contributing to the delinquency of a minor pending against Freeman at the time of his cross-examination.

A perusal of the testimony of the three complaining witnesses, taken together with the corroborating testimony of Freeman's step-daughter, reveals that the specific conduct with which Freeman was charged was in itself fairly strongly incriminating. A strong inference as to the culpability of Freeman's intent would have arisen from the specific nature of the conduct ascribed to Freeman by the state's witnesses. Nonetheless, it may be conceded that the acts with which Freeman was charged were not entirely unequivocal, and might have supported a plausible defense based upon lack of intent.

Yet the fact is that such a defense was never advanced. It is crucial to note that prior to being cross-examined Freeman had already testified concerning the charges of contributing to the delinquency of a minor. His testimony made it obvious that he was not, in fact, basing his defense upon the innocence of his intent; instead, he flatly denied engaging in the conduct with which he was charged. Consequently, by the time the state began its cross-examination of Freeman, it had already become apparent that Freeman's intent with regard to the three counts of contributing to the delinquency of a minor was not, and would not be, contested. Given this situation, it is simply difficult to perceive a compelling necessity for introducing evidence of other similar crimes on the issue of intent.

██ Ultimately, the admissibility of evidence of prior crimes must be governed by balancing its probative value on a given issue against the potential for prejudice which it creates. Tenuous or marginal probative value of prior crimes evidence must never be allowed to serve as an excuse for implanting prejudice in the minds of the jury. Under the circumstances of this case, we conclude that the highly prejudicial impact of the state's cross-examination far outweighed any value which it might have had on the issue of Freeman's intent.

C. *Proof of Freeman's prior conviction as evidence impeaching the testimony of Dr. Stolzheise.*

The final alternative propounded by the state is that evidence of Freeman's 1948 conviction was relevant to impeach the testimony of Dr. Stolzheise. Since Dr. Stolzheise testified that his opinion would to some extent be modified if he learned that Freeman had previously engaged in misconduct similar to that for which he was on trial, the state argues that by showing that Freeman did, in fact, engage in such prior misconduct, it was in effect impeaching Dr. Stolzheise. This is in reality an attempt to bring in through the back door that which would not fit through the front.

██ It is well settled that extrinsic evidence may be admitted to show specific error in the testimony of an opposing witness; however, extrinsic evidence is not permitted to contradict a witness if it re-

lates to a collateral matter. As McCormick puts it:

> The classic approach is that facts which would have been independently provable regardless of the contradiction are not 'collateral'.[33]

Since, as we have already held, the evidence of Freeman's prior offense was admissible neither on the issue of his character, nor on the issue of his intent, such evidence must be deemed collateral, and therefore does not form a permissible basis for impeachment.

Moreover, it should be noted that Dr. Stolzheise had been effectively impeached upon cross-examination by the state, and that proof of the details of Freeman's 1948 conviction could have had no additional value as impeachment evidence. In its cross-examination of Dr. Stolzheise, the state was allowed to hand him the record of Freeman's prior conviction. The jury was apprised of the fact that the record contained information concerning Freeman's conviction for the crime of contributing to the delinquency of a minor, or indecent liberties. The fact of Freeman's conviction was not questioned. Upon this basis Dr. Stolzheise stated that he would require additional consultation in order to determine the effect of the prior offense upon his assessment of Freeman's personality. We think that by this stage of the proceedings Dr. Stolzheise had been effectively impeached. Apparently the state shared this view below, since it moved to strike Dr. Stolzheise's testimony from the record. Thus, further impeachment would have been fruitless.

## Plain Error

The state claims that even if its cross-examination of Freeman was improper, Freeman failed to preserve the error by making timely objections. It is contended that any error in the cross-examination would not arise to the stature of plain error.[34] We will normally refuse to consider arguments raised for the first time on appeal. Underlying this practice is the basic policy that a trial court be afforded the first opportunity to rule on questions of law and fact.[35] Without the normal requirement of timely objections, the trial court would likely be led to erroneous rulings by the apparent approval of the parties, and the parties would be free to advance arguments on appeal contrary to arguments made below.[36] We have from time to time, however, enunciated conditions under which we will rule upon arguments raised for the first time on appeal. We have held that such arguments will be considered where the alleged error is so obviously prejudicial that it constitutes plain error,[37] where the error is jurisdictional,[38] or where it involves the deprivation of a fundamental right.[39]

In the present case, we are unable to agree with the position taken by the state. As we have already indicated, numerous objections were made by defense counsel during the state's cross-examination of Freeman. Contrary to the assertions of the state, not all of these objections were technical or procedural. While defense counsel might have been far more cogent in phrasing his objections to individual questions asked by the state, on the whole his

33. C. McCormick, *supra* note 8, § 47, at 101.

34. Alaska R.Crim.P. 47(b) states:
    Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

35. Bowker v. State, 373 P.2d 500, 505 (Alaska 1962).

36. Thomas v. State, 391 P.2d 18, 20 (Alaska 1964).

37. Kugzruk v. State, 436 P.2d 962, 963–964 (Alaska 1968); Bowker v. State, 373 P.2d 500, 505 (Alaska 1962).

38. Kugzruk v. State, 436 P.2d 962, 963–964 (Alaska 1968); Thomas v. State, 391 P.2d 18, 20 (Alaska 1964).

39. DeSacia v. State, 469 P.2d 369, 373 (Alaska 1970); Hammonds v. State, 442 P.2d 39 (Alaska 1968); Goreson v. State, 432 P.2d 326 (Alaska 1967).

objections were sufficient to alert the court to the fact that he sought the exclusion of the entire line of inquiry.

Furthermore, it is significant that the error in the present case was not limited to an isolated question or to an improper reference made in passing by the state. Rather, it took the form of a protracted and insistent cross-examination which brought to the surface numerous alleged details of Freeman's prior offense. The extended, fragmentary and disjointed manner in which the alleged details of the prior crime were revealed served to exaggerate the importance of what once was apparently a relatively minor offense. In other respects, the case was a close one. Evidence of Freeman's guilt could by no means be termed overwhelming. Much of the state's proof as to times, dates, and precise occurrences was muddled, and many aspects of the state's case were effectively contradicted by the defense.

Finally, we take into account the fact that the instructions of the trial court in effect urged the jury to make improper use of the evidence.[40] Under these conditions, even the most stalwartly objective of jurors could hardly have failed to be unduly affected by the improper questions. We therefore hold that the error committed by the state was obviously prejudicial, and that it must be deemed to have substan-

tially impinged upon Freeman's right to a fair and impartial trial.

The judgment of conviction entered below is set aside, and the case is remanded for a new trial.

40. In its Instruction No. 30 the court stated:

> Evidence was offered in this case for the purpose of showing that the defendant committed other crimes than the one of which he is accused and for which he is on trial in this action * * *.
>
> Such evidence was received for a limited purpose only; not to prove distinct offenses or continual criminality, but for such bearing, if any, as it might have on the question whether the defendant is innocent or guilty of the crimes charged against him in this action.
>
> You are not permitted to consider that evidence for any other purpose, and as to that purpose you must weigh such evidence as you do all other in the case.
>
> The value, if any, of such evidence depends on whether or not it tends to show—
>
> (1) —that the defendant entertained the intent which is a necessary element of the alleged crimes for which he is now on trial; or
>
> (2) —that there existed in the mind of the defendant a plan, scheme, system, or design, into which fitted the commission of the offenses for which he is now on trial; or
>
> (3) —That the defendant entertained a sexual inclination or lustful disposition at the time of the alleged crimes for which he is now on trial.