**David M. VESSELL, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 4488.**

Supreme Court of Alaska.

Feb. 20, 1981.

Sue Ellen Tatter, Dana Fabe, Asst. Public Defenders, Brian Shortell, Public Defender, Anchorage, for appellant.

David Mannheimer, Asst. Atty. Gen., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.

## OPINION

BURKE, Justice.

David M. Vessell stands convicted of robbery. In this appeal he contends (1) that the trial court erred in admitting evidence of another uncharged offense; (2) that a post-arrest "show-up," conducted without benefit of counsel, violated his right to due process of law; and (3) that a search warrant used to obtain part of the evidence against him was issued without adequate scrutiny of the supporting affidavit. We conclude that there was no error and affirm Vessell's conviction.

## I

In the early morning hours of December 17, 1977, a gunman entered the Quick-Stop # 4, an all night grocery on Spenard Road, in Anchorage. The gunman, whose face was covered by his scarf, proceeded to rob the store clerk, William Deal, and a customer that was present, Robert Schenebeck, Jr. After ordering Deal and Schenebeck to the rear of the store, the robber left via the front door.

Deal immediately telephoned the Anchorage Police Department to report the robbery. According to the station log, Deal's call was received at 1:41 a. m. With the assistance of Schenebeck, Deal described the robber as a black male, approximately 6'1" to 6'2" in height, wearing a blue down jacket, blue jeans, boots, a maroon scarf, and a knit hat. Patrol units were immediately advised, by radio, of the Quick-Stop robbery and given a description of the suspect.

Officer Walter Stiehm was in his patrol car near the intersection of Benson Boulevard and Minnesota Drive when the report of the robbery and the suspect's description was broadcast. Recalling a previous incident, in which a second Quick-Stop store was robbed while police were responding to the robbery of another, Officer Stiehm elected not to activate his emergency lights and siren. Instead, he drove slowly toward the reported crime scene, taking time to check the other all night groceries along his route of travel. At approximately 1:44 a. m., as he approached the Food Pantry, located on Spenard Road, approximately one-half mile from the Quick-Stop # 4, Officer Stiehm observed a man entering the store whose appearance matched the description of the suspect in the Quick-Stop robbery. He radioed for a rebroadcast of the suspect's description and confirmed the fact that the man entering the Food Pantry matched that description in all particulars. Stiehm called for assistance, then exited his patrol vehicle.

According to Calvin Miller, the clerk of the Food Pantry, the man that Stiehm saw enter approached him with a drawn gun and motioned him away from the cash register and toward the store safe. At that time, the man's face was covered by his scarf. When another person present exclaimed that the police were outside, the man put his gun behind his back, lowered his scarf so that it no longer covered his face, and walked out of the store.

Outside, the suspect was stopped by Stiehm, now aided by Officer Robert Dinwiddie. A pat down search revealed that he was carrying a loaded Charter Arms .38 special revolver, which Deal and Schenebeck later said was like the one used to rob them. The man was subsequently identified as David M. Vessell.

Vessell was placed under arrest and transported back to the Quick-Stop # 4 for purposes of a show-up. There, Deal and Schenebeck identified Vessell as the Quick-Stop robber based on the fact that Vessell's clothing was the same as that worn by the man that had robbed them a few minutes before.

Meanwhile, Officer Dinwiddie returned to the Food Pantry where he had observed an automobile parked by the side of the store. The car's engine was running and Dinwiddie noticed a brown paper bag on the front seat. Dinwiddie did not look in the bag, but he recorded the car's license number, turned its engine off, and locked it. The car was owned by Paulette Gordon, Vessell's girlfriend. After his arrest, Vessell called Gordon and told her that she could find her car "by the new store at Woodland and Spenard," the location of the Food Pantry.

On Monday, December 19, 1977, the police obtained a search warrant for Gordon's automobile, which had been impounded. When the warrant was executed, the vehicle was found to contain the fruits of the Quick-Stop robbery, which included several distinctive items such as promotional cigarette lighters bearing the Quick-Stop logo.

1. Subsequent to the trial in this case, we promulgated Alaska Rule of Evidence 404(b), codifying this principle.

At trial, Vessell's defense was that he had been mistakenly identified as the man who had robbed Deal and Schenebeck at the Quick-Stop # 4. He argued that the clothes he had been wearing were not uncommon and that it would have been impossible for him to traverse the distance between the Quick-Stop # 4 and the Food Pantry, in the few minutes that elapsed before he was seen at the latter location. Thus, the matter of his identification was a hotly contested issue, proof of which was essential to the state's case.

## II

Vessell's first claim of error concerns the superior court's decision to admit testimony describing Vessell's conduct while inside the Food Pantry. Such evidence, he argues, was more prejudicial than probative and, therefore, should have been excluded.

That evidence certainly had the potential for prejudice, in that it tended to indicate that Vessell was preparing to commit another armed robbery. We believe, however, that the evidence was nevertheless admissible.

Generally, evidence of other unlawful conduct is inadmissible against an accused, *unless relevant to an issue* in the case. As stated in *Watson v. State*, 387 P.2d 289 (Alaska 1963):

> Evidence that reveals the commission of an offense other than that for which the defendant is being tried is inadmissible if it is relevant merely to show criminal disposition. But such evidence is admissible, . . . when it is relevant to prove some other material fact.

387 P.2d at 293 (footnote omitted).[1] The relevancy of such evidence, however, is not the only consideration; the trial court must determine that its probative value outweighs its prejudicial effect. As stated in *Freeman v. State*:

Ultimately, the admissibility of evidence of [other] crimes must be governed by balancing its probative value on a given issue against the potential for prejudice which it creates. Tenuous or marginal probative value of [other] crimes evidence must never be allowed to serve as an excuse for implanting prejudice in the minds of the jury.

486 P.2d 967, at 979. The issue in question must also be one genuinely in dispute, so that there is some necessity for its introduction:

> Evidence of other offenses committed by the accused will always be potentially prejudicial; for this reason, before such evidence is admitted, care must be taken to ascertain whether it is actually necessary in the circumstances of the particular case. Manifestly, where there is no dispute as to the issue [in question], evidence going merely to [that issue] will be superfluous, and its only possible effect will be a deleterious one.

486 P.2d at 977.

The thrust of Vessell's argument is that there was no need for the evidence detailing his conduct while in the Food Pantry. According to Vessell, the only thing relevant to the issue of his identification as the man that had robbed Deal and Schenebeck, was the fact that he possessed a revolver similar to the one used in that robbery. He argues that his possession of the revolver could have been established without disclosing the details of his conduct inside the store.

The determination of whether the probative value of a piece of evidence outweighs its prejudicial impact is committed to the sound discretion of the trial court.

We will interfere with the exercise of that discretion only when convinced that it has been abused. *Frink v. State,* 597 P.2d 154, 170 (Alaska 1979). In the case at bar, we conclude that the court's decision to allow introduction of Vessell's conduct while in the Food Pantry did not amount to an abuse of discretion. As previously noted, Vessell argued strenuously at trial that he had been mistakenly identified and that he could not have traveled from the Quick-Stop to the Food Pantry, where he was arrested, in the short period of time that was available. Vessell's actions within the Food Pantry were highly probative of the fact that he was indeed the same man that had robbed Deal and Schenebeck in that they tended to establish both opportunity and a method of operation that was quite similar in the two cases. Vessell's approach to the Food Pantry on foot, while he left his car running beside the building, his possession and use of the same kind of revolver, and his use of his scarf to hide his face from his intended victims, all tended to indicate that he was the same man that had robbed Deal and Schenebeck, and to explain his ability to perpetrate the robbery at the Quick-Stop # 4 and still be present a few minutes later at the Food Pantry.[2] Further, since it is quite unlikely that one who has committed an armed robbery at one grocery store would rush to another for the purpose of shopping, the state was entitled to dispel any notion that Vessell was merely shopping at the Food Pantry at the time he was apprehended.

### III

Vessell next contends that the identification procedure used at the Quick-Stop denied him due process of law.

2. We note also that the court gave an instruction limiting the jury's use of this evidence. Instruction # 15 stated:

> Evidence has been received tending to show that the defendant may have engaged in bad conduct at the Food Pantry.
>
> Such evidence was not received and may not be considered by you to prove that he is a person of bad character or that he has a disposition to commit crimes.
>
> Such evidence was received and may be considered by you only for the limited purpose of determining if it tends to show the identity of the person who committed the crime, if any, of which the defendant is accused.
>
> For that limited purpose you may consider such evidence, you must weigh it in the same manner as you do all other evidence in the case.
>
> You are not permitted to consider such evidence for any other purpose.

As previously noted, following his arrest Vessell was returned to the Quick-Stop for a show-up. There he was viewed by Deal and Schenebeck while he was handcuffed and seated in the rear of the patrol car. Their "identification," however, was based upon the fact that his clothing was the same as that worn by the man that had robbed them. Neither claimed that he could recognize his facial features. Vessell claims that this procedure violated due process in that it was unnecessarily suggestive and denied him the right to have counsel present.

■ The fact that the police used a show-up, rather than an ordinary lineup, to obtain the identification of the perpetrator of a crime does not in and of itself amount to a denial of due process. *Neil v. Biggers*, 409 U.S. 188, 198, 93 S.Ct. 375, 381, 34 L.Ed.2d 401, 411 (1972); *Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199, 1206 (1967). If, under the "totality of the circumstances," there is no substantial likelihood of misidentification, due process is satisfied. In *Neil v. Biggers*, the Supreme Court of the United States stated:

> [T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

409 U.S. at 199, 93 S.Ct. at 382, 34 L.Ed.2d at 411.[3]

■ In the instant case, we believe that the criteria for admissibility were satisfied. The victims of the robbery, Deal and Schenebeck had ample opportunity to view the man who robbed them. The description that they gave to the police immediately after the robbery was detailed and accurate, although they differed slightly on the exact type of boots that the robber wore. In addition, the show-up took place within minutes after the robbery had occurred. Finally, both Deal and Schenebeck were positive in their statements that Vessell wore the same clothing as the man that robbed them,[4] although neither claimed that he could recognize Vessell's facial features.

■ Turning to Vessell's claim that he was entitled to have an attorney present at the show-up, this court has stated that the presence of counsel is not mandated if the circumstances call for an immediate identification as part of a "prompt and purposeful investigation." *Blue v. State*, 558 P.2d 636, 642 (Alaska 1977). Vessell argues that there was no need to conduct the show-up immediately, since he was already under arrest for his robbery attempt at the Food Pantry. This argument overlooks the fact that the police had another, independent concern: to apprehend the man that had robbed Deal and Schenebeck at the Quick-Stop only a few minutes before. If Vessell was not the same man, it was important for the police to continue with their efforts to locate and apprehend the other robber. If, on the other hand, Vessell could be identified, the police could devote their available resources to other activities. The man who had robbed Deal and Schenebeck was known to be armed and presumably dangerous. Thus, the police had a legitimate need to ascertain as soon as possible whether that individual was already in custody or still at large.

For these reasons, we believe that the show-up did not violate Vessell's right to due process.

## IV

■ Vessell's final contention is that the issuing magistrate failed to give adequate

---

3. We recently utilized these standards in considering the admissibility of identification testimony in *Holden v. State*, 602 P.2d 452 (Alaska 1979).

4. We note also that the jury was instructed that it must independently evaluate the strength of the identification evidence, using essentially the criteria from *Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401, 411 (1972).

scrutiny to the affidavit offered in support of the search warrant for Paulette Gordon's automobile. Vessell claims that "even the most cursory reading of the affidavit will reveal the existence of a plausible alibi for the defendant." According to the affidavit, Vessell was observed inside the Food Pantry at 1:40 a. m., one minute before Deal and Schenebeck were allegedly robbed at the Quick-Stop grocery. Thus, Vessell argues, the issuing magistrate should not have issued the search warrant without further inquiry.

We believe that this argument is without merit. Regardless of any facial inconsistency in the approximate times of the two robberies, as stated in the affidavit, it is abundantly clear from the other parts of the affidavit that those robberies occurred one after the other, and not contemporaneously. The magistrate could certainly infer, that Vessell's attempted robbery of the Food Pantry occurred after his robbery of Deal and Schenebeck, regardless of the approximate times stated in the affidavit. He could further infer that there was reason to believe that the fruits or evidence of the robbery of Deal and Schenebeck could be found in Paulette Gordon's vehicle.

AFFIRMED.

RABINOWITZ, C. J., concurs.

RABINOWITZ, Chief Justice, concurring.

I disagree with the court's conclusion that the evidence of Vessell's bad acts in the Food Pantry was properly admitted in the absence of any attempted robbery charge based on these acts.

The court asserts that the subsequent attempted robbery tended to establish both opportunity and a method of operation that were similar in the two cases. The opportunity point stemmed from Vessell's argument that he could not have traveled from the Quick-Stop to the Food Pantry, where he was arrested, in the short period of time that was available. The state contends that "[t]he answer lies in Paulette Gordon's car, which Vessell left running at the side of the Food Pantry when he entered the store." I

agree, but I see no basis on which it can be said that Vessell's misconduct in the Food Pantry itself expanded or affected this opportunity at all. Evidence of the car could have been admitted without reference to Vessell's attempted robbery of the Food Pantry.

We have established the "signature" standard for admission of modus operandi evidence, which requires that "the prior crime [be] so nearly identical in method with the crime in question that it indicates the same person committed both crimes." *Galauska v. State*, 527 P.2d 459, 467 (Alaska 1974), *modified on other grounds*, 532 P.2d 1017 (Alaska 1975). Although the use of a scarf, gun and car to accomplish each crime does reveal some similarity between the two crimes, these elements are not so uncommon or distinctive as to constitute a signature.

The state argues a third point: that the testimony is needed for testimonial completeness, as Vessell's sudden departure from the Food Pantry, and his adjustment of his scarf as he left, make little sense unless viewed in the context of his robbery attempt and the arrival of the police. I do not accept the contention that these actions make little sense; one who had just robbed a small store moments before would be likely, upon seeing the police pulling into the parking lot of a different small store, to make an abrupt exit.

Thus, I find that the grounds asserted for the probative value of the evidence are minimally persuasive at best, and its prejudicial effect was obvious. One who has been shown to be generally disposed to rob small stores is much more likely to be found to have robbed this particular small store, and this is precisely the sort of inference the law prohibits.

However, the remaining evidence against Vessell was so strong that I must conclude that the admission of this evidence did not substantially influence the result and that therefore any error in admitting the evidence was harmless. *Love v. State*, 457 P.2d 622, 629–32 (Alaska 1969). Thus, I concur with the court in affirming the conviction.