[Crim. No. 15474. Second Dist., Div. Five. Nov. 6, 1969.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES MAHLLON TODD, Defendant and Appellant.

## COUNSEL

Gary A. Polinsky, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Thomas E. Warriner, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**KAUS, P. J.**—Defendant appeals from a judgment of conviction of rape (Pen. Code, § 261, subd. 1), lewd conduct with a child under 14 years of age (Pen. Code, § 288), and causing the life and limb of a child to be endangered (Pen. Code, § 273a). The case was tried to a jury.

We reverse because the court permitted the prosecution to introduce evidence of a witness' prior inconsistent statements without cautioning the jury to consider the statements only for impeachment purposes. (*People* v. *Johnson,* 68 Cal.2d 646, 648 [68 Cal.Rptr. 599, 441 P.2d 111].)

At 5 p.m. on December 3, 1963, Pearl Sue Todd, defendant's 2½-year-

old daughter walked into the Todd house and sat down in the living room. Her mother, defendant's wife, who was washing clothes in the kitchen, noticed that the child was crying. When Pearl Sue walked to the bathroom Mrs. Todd observed that the child's panties were soiled in front, and discovered that she was bleeding from the vagina. Mrs. Todd called to defendant, who was in the den of the home. Defendant telephoned a doctor and then walked across the street and got two neighbors, Mrs. Gerhart and Mrs. Medeiros, to take his daughter to the hospital.[1] Mrs. Todd accompanied her daughter to the hospital; defendant remained home with his four other children and some neighbors' children.

Doctor Dunlop examined the child at the hospital and found a one inch long tear in the rear wall of the vagina. The hymen was broken. Blood from the wound was examined under the microscope and one live sperm was observed by the laboratory technologist.[2]

Officer Baca, who on December 3, 1963, was employed by the Baldwin Park Police Department, met Mrs. Todd at the hospital, drove her to the police station, and then home. According to Baca, she told him that no male adults besides defendant had been at the Todd home and that she had not had sexual intercourse with her husband for eight months prior to December 3 because of an injury she had sustained in giving birth to Pearl Sue. At the trial she testified that a male friend of defendant was in the Todd home during part of December 3, and that she had sexual intercourse with defendant on the morning of that day. Evidence of Mrs. Todd's statements at the police station was introduced, ostensibly, to impeach her testimony. But the jury was never admonished not to consider the statements as substantive evidence.

When Mrs. Medeiros and Mrs. Gerhart returned to the latter's house between 11 p.m. and midnight defendant walked over and inquired about his daughter and wife. Mrs. Gerhart told him that the child was at the hospital and that Mrs. Todd was with the police. Pursuant to Officer Baca's instructions she also told him that the police would be "getting in touch" with him. After being thus informed defendant stated, "Well, they're going to come and pick me up."

Thereafter, Officer Baca and Mrs. Todd arrived at the Todd residence. Baca asked defendant to come down to the police station. Defendant said that he had not done "anything" and that he had witnesses to verify that he

---

[1] Defendant's car was not working. The neighbor whose car was used, Mrs. Gerhart, was unable to drive, so defendant got the second neighbor, Mrs. Medeiros, to drive to the hospital.

[2] The blood examined was taken from the vaginal orifice. Doctor Dunlop testified that spermatozoa can live in the vagina for 24 to 48 hours. Outside of such an environment they die within four or five hours of ejaculation.

was not home when "it happened." Before defendant made this statement, the police officer had not informed defendant of the nature of his daughter's injuries.[3] He was then taken to the police station and placed under arrest.

The defense was a denial. Defendant confirmed his wife's testimony with respect to the male friend being in the house and concerning intercourse on the morning of December 3.

Since the trial court did not instruct the jury to limit its consideration of Mrs. Todd's prior inconsistent statements to impeachment, defendant was denied the right of confrontation. (*People* v. *Johnson,* 68 Cal.2d 646 [68 Cal.Rptr. 441, 440 P.2d 921].) We cannot fairly expect the court to have done so, since the case was tried before the *Johnson* decision was filed,[4] but neither can we fault defendant for failing to object to the evidence at trial or to request a limiting instruction on grounds announced for the first time in *Johnson.* (*People* v. *Odom,* 71 Cal.2d 709, 717 [78 Cal.Rptr. 873, 456 P.2d 145].)

Since constitutional error was committed, we must reverse unless we are satisfied beyond a reasonable doubt that the evidence of the prior statements did not influence the verdict. (*Chapman* v. *California,* 386 U.S. 18, 24 [17 L.Ed.2d 705, 710, 87 S.Ct. 824, 24 A.L.R.3d 1065]; *People* v. *Johnson, supra,* 68 Cal.2d 646, 660.) It is clear from the record that someone raped Pearl Sue Todd. But, apart from access, the strongest evidence tending to prove that it was defendant was his exculpatory statement to Officer Baca when the latter asked him to come down to the police station. Mrs. Todd's prior statements buttress this weak evidence by showing that defendant's access was exclusive and that he had a possible motive for committing the act. On this record we cannot say that the *Chapman* test is met.

Defendant makes several other claims of error. We will discuss those which raise issues likely to arise at a retrial.

■ Over objection the prosecution was permitted to introduce evidence that on August 26, 1963, a Doctor Ambrosecchia had examined Pearl Sue and noticed a small laceration "of [the] inferior aspect of [the]

---

[3]Apart from physical access, this remark was the strongest evidence connecting defendant with the crime. In an attempt to rebut the inference of consciousness of guilt arising from it, defendant testified that he had called the hospital while his wife was there and that the hospital referred him to the police department. At first the police told him that they knew nothing about his wife and child. Defendant later called the police again, was informed that his wife was at the station, and that they would soon bring her home.

[4]Respondent's brief is mistaken in its assertion that the trial took place after *Johnson.* Even judgment was pronounced more than two months before *Johnson.*

introitus" which is the lowest portion of the outside of the vagina. The wound was infected, from which the doctor concluded that it must have been "of one or two or three days' duration." It had been treated. On the basis of the mother's statement to him and his own past experience he concluded that the wound was self-inflicted. Mrs. Todd's testimony concerning the incident was extremely vague. Defendant testified that he was not told about the injury until the day the child was taken to the doctor.

In the superior court the prosecution successfully urged that this evidence was admissible on the issue of intent. On appeal it is claimed that the evidence was admissible to prove the identity of the person who raped Pearl Sue. The People chiefly rely on *People* v. *Kelley,* 66 Cal.2d 232, 240 [57 Cal.Rptr. 363, 424 P.2d 947] where it is said that: "The law in California with respect to the admissibility of the commission of other sex offenses to prove intent is not altogether clear. . . . in cases involving sex crimes, evidence of other not too remote sex offenses *with the prosecuting witness* is admissible to show a lewd dispostion or the intent of defendant *towards the prosecuting witness. (People* v. *Sylvia,* 54 Cal.2d 115, 119-120 [4 Cal.Rptr. 509, 351 P.2d 781].)," but *Kelley* also holds that: "The evidence should be received with 'extreme caution,' and if its connection with the crime charged is not clearly perceived, the doubt should be resolved in favor of the accused. *(People* v. *Albertson, supra,* 23 Cal.2d 550, 577 [45 P.2d 7]; *People* v. *Sykes, supra,* 44 Cal.2d 166, 175 [280 P.2d 769] dissenting opinion.)" (66 Cal.2d at p. 239.)

We think there is no substantial evidence that defendant raped Pearl Sue in August and the evidence was clearly inadmissible. If, at a retrial, the prosecution should somehow fall heir to additional evidence concerning the August incident, great care should be taken to identify the issue on which the evidence is admissible. As the case developed intent never became an issue. The defense pointed to another person as the perpetrator of the offense. Therefore, if at all, the evidence was only admissible in rebuttal. This is the holding of *People* v. *Chacon,* 69 Cal.2d 765, 777, footnote 5 [73 Cal.Rptr. 10, 447 P.2d 106].[5] A great many difficulties with evidence of other offenses could be avoided by an assessment of the defense posture. A plea of not guilty does not tell the prosecutor just what element of the

---

[5]"The evidence concerning Chacon's conviction for battery on a noninmate (Pen. Code, § 4501.5) could not have been admitted for this purpose since it does not carry a maximum life sentence. Since the conviction was for a recent similar offense, however, it was admissible to prove malice and to negate Chacon's defense of non-involvement except as a peacemaker. *(People* v. *Wells, supra,* 33 Cal.2d 330, 339-343 [202 P.2d 53]; McCormick, Evidence, § 157, pp. 329-330 (1954); Witkin, Cal. Evidence (2d ed. 1966) § 345, and cases cited therein.) *For this purpose, however, it could be introduced as rebuttal, for it will only be after the defense has presented its case that the defense contentions will be known."* (Italics added.)

charge will be disputed. Of course, he must be ready to prove every element as part of his case in chief, but it is not the law that he may introduce evidence of other offenses to support a part of his case which he has proved to the hilt. (*People* v. *Gregg,* 266 Cal.App.2d 389 [71 Cal.Rptr. 920].) Understandably, however, prosecutors are reluctant to withhold the evidence until rebuttal, fearing that it will be ruled improper at that time. The footnote in *Chacon,* referred to above, should remove that fear. Thus, even had the evidence concerning the August incident been more substantial, it never should have been permitted as part of the People's case in chief.

■ Defendant objects that Doctor Dunlop was permitted to express his opinion to the effect that the child had been raped. The prosecutor defends the ruling. We are puzzled, because the court specifically and properly did not allow the doctor to state his opinion. Once there was testimony that the hymen had been broken and that a sperm was found, there was nothing that an expert opinion could contribute. (*People* v. *Wilson,* 25 Cal.2d 341, 349 [153 P.2d 720]; *People* v. *Arguello,* 244 Cal.App.2d 413, 418 [53 Cal.Rptr. 245].)

■ Finally defendant complains that the court refused to give the standard cautionary instruction requested by him.[6] At the trial defense counsel realized that, as requested, the instruction was inappropriate, Pearl Sue never having become a witness. He therefore requested that it be modified to fit this case. The court refused.

The People argue that a cautionary instruction is never appropriate where the prosecuting witness does not testify.

The reasons for the requirement of the cautionary instruction in sex cases have been held to be ". . . (1) the fact that the only available direct witnesses are ordinarily the complaining witness and the defendant, and hence the charge is easy to make and difficult to disprove; (2) cases involving sex crimes generally arouse passion and prejudice in the minds of decent people, including jurors; (3) the ease with which the charge can be made to satisfy spite, vengeance, vindictiveness and other base motives. (See *People* v. *Putnam, supra,* 20 Cal.2d 885, 889 [129 P.2d 367]; *People* v. *Nye, supra,* 38 Cal.2d 34, 40 [237 P.2d 1].)" (*People* v. *McGhee,* 123 Cal.App.2d 542, 544 [266 P.2d 874].) Obviously only the second of these reasons applies in the case at bar. In *People* v. *McCracken,* 39 Cal.2d 336

---

[6]"A charge such as that made against the defendant in this case is one, which, generally speaking, is easily made, and once made, difficult to disprove. From the nature of a case such as this, the complaining witness and the defendant usually are the only witnesses. Therefore I charge you that the law requires that you examine the testimony of the prosecuting witness with caution.

"The fact that the charge here made is one difficult to disprove should not deter you from rendering a verdict of guilty, if you are convinced beyond a reasonable doubt that the defendant is guilty as charged."

[246 P.2d 913], a murder case in which one of the prosecution theories was that the killing had been done in the perpetration of an act punishable under section 288 of the Penal Code, the Supreme Court said: "Complaint is made of the trial court's failure to give a precautionary instruction as required in cases involving Penal Code, section 288. The charge against defendant was murder (Pen. Code, § 189) and not a violation of Penal Code, section 288. Sexual offenses are difficult to disprove, and a cautionary instruction is therefore required where the victim is the prosecuting witness. (*People* v. *Putnam,* 20 Cal.2d 885 [129 P.2d 367]; *People* v. *Lucas,* 16 Cal.2d 178 [105 P.2d 102, 130 A.L.R. 485].) However, in the case of murder the reasons listed in *People* v. *Benson,* 6 Cal. 221, 223 [65 Am.Dec. 506], are inapplicable since the victim is dead and physical evidence is usually present. The trial court therefore did not err in refusing to give the precautionary instruction." (*People* v. *McCracken,* 39 Cal.2d at pp. 349-350 [246 P.2d 913].) On the other hand it has been judicially recognized that many of the same motivations which induce false charges of sex claims ,to be made by alleged victims, also move mothers and other relatives to make unfounded accusations of sexual misconduct. (*People* v. *Scholl,* 225 Cal.App.2d 558, 562-564 [37 Cal.Rptr. 475].) The People's position is therefore possibly too broad. In the case at bar, however, neither the child nor the mother gave testimony of the nature which calls for the cautionary instruction. The ruling was therefore proper under the circumstances of this case.

In a brief filed by himself, defendant claims that he has been subjected to double jeopardy and that his statement to Officer Baca was admitted in violation of his constitutional rights. (*Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R. 3d 974].)

■ The first contention has no merit whatever. Defendant was first tried in 1964. Thereafter he was committed as a sexual psychopath. He was returned to the court in 1967 when he successfully moved for a new trial. Under the circumstances no question of double jeopardy arises. (*People* v. *Helbing,* 61 Cal. 620, 622.)

Defendant's second point also merits little discussion. There was some conflict between him and Officer Baca not only concerning the circumstances under which he made his statement, but also with respect to the statement itself. We cannot possibly say that the trial court's ruling that the statement was admissible lacks evidentiary support.

The judgment is reversed.

Stephens, J., and Aiso, J., concurred.