[No. C002699. Third Dist. Feb. 24, 1988.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY,
Respondent;
DAVID DUVAL, Real Party in Interest.

**COUNSEL**

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, James T. McNally, Thomas Y. Shigemoto and Esteban Hernandez, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Michael S. Sands and M. Bradley Wishek for Real Party in Interest.

**OPINION**

**PUGLIA, P. J.**—Real party in interest (defendant) is charged by information with several felony offenses, including oral copulation with a minor (Pen. Code, § 288a, subd. (b)(1)) and unlawful sexual intercourse. (Pen. Code, § 261.5; hereafter all statutory references to sections of an undesignated code are to the Penal Code.) The charges stem from defendant's alleged sexual involvement with two minors, Sonia D. and Sheryl M. Respondent court granted defendant's motion to sever counts five and six, which involve Sheryl, from the remaining counts which relate to Sonia. Respondent court also granted defendant's motion to dismiss (§ 995) an allegation of great bodily injury (§ 12022.7) appended to one count of unlawful sexual intercourse and a charge of felony child abuse (§ 273a, subd. (1)). The People seek a writ of mandate to set aside the trial court's orders. We shall conclude the trial court did not err in its rulings and shall therefore discharge the alternative writ and deny the petition.

At the relevant times, Sonia and Sheryl were students at, and defendant was the vice principal of, Hiram Johnson High School. At the preliminary hearing, each girl testified she had engaged in a sexual relationship with defendant.

Sonia testified that when she was 15 years old and a 10th grade student, she began visiting defendant in his home. During these visits she and defendant would kiss and hug, and defendant would fondle her breasts and vagina. Sonia testified that on one occasion she stayed after school and performed an act of oral copulation on defendant in the school

psychologist's office. Near the end of their relationship, she and defendant engaged in a second act of oral copulation and an act of sexual intercourse. Sonia testified that prior to the act of intercourse, she was a virgin. She further testified that as a result of intercourse with defendant, she became pregnant and had an abortion.

Sheryl testified that when she was 17 years old and a 12th grade student, she began visiting defendant in his home. On these occasions, she and defendant would engage in mutual petting. In January or February 1984, the petting and fondling relationship culminated in acts of oral copulation and intercourse.

Both Sonia and Sheryl testified they voluntarily participated in the sexual acts with defendant.

Following the preliminary examination, an information was filed charging defendant as follows:

Count One: Oral copulation with Sonia, a person under 16 years of age, defendant being a person over 21 years of age. (§ 288a, subd. (b)(2));

Count Two: Oral copulation with Sonia, a person under 18 years of age (§ 288a, subd. (b)(1));

Count Three: Unlawful sexual intercourse with Sonia (§ 261.5), with the intentional infliction of great bodily injury during the commission of the offense (§ 12022.7);

Count Four: Felony child abuse upon Sonia (§ 273a, subd. (1));

Count Five: Unlawful sexual intercourse with Sheryl (§ 261.5);

Count Six: Oral copulation with Sheryl, a person under 18 years of age (§ 288a, subd. (b)(1)).

## I

In support of his motion to sever counts five and six from the remaining counts, defendant claimed he would suffer undue prejudice from a consolidated trial of all charges. Respondent court agreed and ordered the charges severed. ■■ We deal first with the People's argument that mandate is the appropriate vehicle by which to challenge an order for severance.

■ "Writ review is ordinarily available where there is no plain, speedy, and adequate remedy in the ordinary course of the law. [Citations.] How-

ever, the People's ability to obtain extraordinary relief is severely restricted where no right to appeal has been provided by the Legislature. [Citation.]" (*People* v. *Superior Court* (*Himmelsbach*) (1986) 186 Cal.App.3d 524, 530 [230 Cal.Rptr. 890].)

"If the prosecution has not been granted by statute a right to appeal, review of any alleged error may be sought by a petition for writ of mandate *only* when a trial court has acted in excess of its jurisdiction and the need for such review outweighs the risk of harassment of the accused. [Citations.] Mandate is not available to the prosecution for review of 'ordinary judicial error' [citation] or even 'egregiously erroneous' orders [citations] when the order or ruling 'on its face is a timely exercise of a well-established statutory power of trial courts . . . from which no appeal is provided in section 1238.' [Citation.]" (Italics in original; fn. omitted; *People* v. *Superior Court* (*Stanley*) (1979) 24 Cal.3d 622, 625-626 [156 Cal.Rptr. 626, 596 P.2d 691].)

An order granting severance is expressly permitted by statute. (§ 954.)[1] However, section 1238, which sets forth those orders and judgments from which the People may appeal, contains no provision for appealing an order granting severance. To allow the People review by mandate to challenge such an order would " 'give the People the very appeal which the Legislature has denied to them.' [Citations.]" (*People* v. *Drake* (1977) 19 Cal.3d 749, 759 [139 Cal.Rptr. 720, 566 P.2d 622].)

In *People* v. *Superior Court* (*Levy*) (1976) 18 Cal.3d 248 [133 Cal.Rptr. 624, 555 P.2d 633], the trial court entered an order directing the People to disclose the identity of a confidential informant. The *Levy* court concluded the order constituted at most ordinary judicial error from which mandate would not lie. (*Id.,* at pp. 251-252.) In *People* v. *Superior Court* (*Stanley*), *supra,* the trial court entered an order directing a change of venue. The People's pretrial writ of mandate was denied, the *Stanley* court concluding the order at most constituted ordinary judicial error for which pretrial review by the People was not available. (*Stanley, supra,* 24 Cal.3d at pp. 626-628.)

Some courts have taken a broad view of "jurisdiction" in support of the People's right to petition for writ of mandate. (See, e.g., *People* v. *Municipal Court* (*Bonner*) (1980) 104 Cal.App.3d 685, 694-696 [163 Cal.Rptr. 822] [mandate permitted to challenge an order compelling discovery, where no

---

[1] Section 954 states in relevant part: "An accusatory pleading may charge two or more different offenses . . . under separate counts . . . *provided, that the court in which a case is triable, in the interests of justice and for good cause shown, may in its discretion order that the different offenses or counts set forth in the accusatory pleading be tried separately or divided into two or more groups and each of said groups tried separately.*" (Italics added.)

showing was made in support of the order; order held to be in excess of jurisdiction and not "ordinary judicial error"]; *People* v. *Superior Court (Duran)* (1978) 84 Cal.App.3d 480, 483-486 [148 Cal.Rptr. 698] [mandate permitted to allow the People to challenge a sentence imposed under the wrong statute]; see also *People* v. *Municipal Court (Kong)* (1981) 122 Cal.App.3d 176, 182 [175 Cal.Rptr. 861] ["[I]n a number of criminal cases, appellate courts have followed the expansive concept of 'in excess of jurisdiction'. . . ."].) The issue of fundamental error is not an open one here, however, since the Supreme Court long ago held the matter of severance is procedural and not jurisdictional. (*In re Pearson* (1947) 30 Cal.2d 871, 874 [186 P.2d 401].)

Here, there is no claim the trial court did not consider the relevant principles of law in deciding the issue of severance. (Cf. *In re Richard C.* (1979) 89 Cal.App.3d 477, 484 [152 Cal.Rptr. 787] [mandate permitted to review juvenile court order based upon erroneous interpretation of Supreme Court case on point].) As such, respondent court clearly did not exceed its jurisdiction—i.e., did not act ". . . without jurisdiction of the subject matter or the person" (*People* v. *Municipal Court (Kong)*, *supra,* at p. 181)—in ordering counts five and six severed from the remaining counts.

In *People* v. *Superior Court (Stanley)*, *supra,* the court, in holding pretrial writ review unavailable to the People to challenge an order granting change of venue, commented: "If the Legislature should decide to provide for mandate review in the present circumstances, it may do so through enactment of an appropriate statute. . . . However, the Legislature has concluded that once a trial court has found that a change of venue is required, the most efficient use of the prosecution's resources is for the prosecution to accept the transfer to the new venue. Extended litigation over the place of trial may result in long delays and may well be more costly than simply accepting the new site for trial. If mandate were available to the prosecution after a trial court has ordered a change in venue, it might impinge on an accused's right to a speedy trial and might, in certain circumstances, lead to the possibility of harassment. [Citation.] [¶] In enacting section 1033, the Legislature determined that the prosecution's interest in having a trial held in the county where an offense was committed (§ 777) must yield if there is a reasonable likelihood that the accused cannot receive a fair trial. It must be presumed that every county will afford the prosecution a fair trial. Absent . . . highly unusual circumstances . . . the issues presented by an order of the trial court granting an accused's motion for change of venue do not warrant the creation of a special remedy for the prosecution if the Legislature has refused to give one." (24 Cal.3d at p. 628.)

The same principles apply to the People's attempt to secure mandate to set aside an order granting severance. Indeed, allowing the People a pretrial

challenge to an order for severance could well extend the litigation beyond the time required to prosecute two separate trials.

We hold that as the People have no right to appeal from an order granting severance, and as any such order is clearly one within the discretion of the trial court (*People* v. *Balderas* (1985) 41 Cal.3d 144, 171-172 [222 Cal.Rptr. 184, 711 P.2d 480]), mandate is unavailable to challenge the order absent the highly unusual circumstance where the court has acted in excess of its jurisdiction. An abuse of discretion in most circumstances constitutes only ordinary judicial error.

■ Moreover, even were a remedy by mandate available, the People would fare no better. While there is no question but that joinder of all of the charged offenses in one information was proper (§ 954), the trial court has the discretion to sever counts ". . . in the interest of justice." (*Ibid.*; see fn. 1, *supra.*) Here, the trial court carefully examined defendant's motion for severance and determined the prejudice that would accrue from a joint trial warranted severance of counts five and six from the remaining counts.

■ In *Williams* v. *Superior Court* (1984) 36 Cal.3d 441 [204 Cal.Rptr. 700, 683 P.2d 699], the court enumerated the factors to be considered in ruling on a motion for severance. These include whether (1) evidence on the crimes to be jointly tried would be cross-admissible in separate trials; (2) a "weak" case has been joined with a "strong" case or with another "weak" case, so that the spillover effect of aggregating evidence on several charges might well alter the outcome of some or all; and (3) certain of the charges are unusually likely to inflame the jury against a defendant. (*Id.*, at pp. 452-454.)

■ The People argue the evidence relating to the incidents involving Sonia and Sheryl would be cross-admissible in separate trials as there are a number of factors tending to show a common plan or scheme on the part of defendant to have sex with minor female students. The People claim these same common factors also show defendant's opportunity to have sex with the victims and his motive for having the victims unchaparoned in his home.

While it is clear there are similarities in the incidents involving Sonia and Sheryl, respondent court was not persuaded they share marks so distinct in number or significance that they logically tend to show any common plan, scheme, opportunity or motive. Questions of cross-admissibility are often complex, and resolution of the issue is more difficult when the only evidence before the trial court is that presented at the preliminary hearing. Obviously, the definitive ruling on cross-admissibility can only come at trial. At that

point the court may consider the People's offer of proof in light of the evidence then before it and make a fully informed decision. Since cross-admissibility must be for some relevant purpose such as to prove identity or intent and the proffered evidence must be more probative than prejudicial, the complete foundational basis for admissibility often is not fully developed until evidence has been received at trial. Here respondent court was required to evaluate defendant's pretrial motion for severance in light of a presumably incomplete factual record. (*People* v. *Balderas, supra,* 41 Cal.3d at p. 171.) On that record, we cannot say respondent court's determination that cross-admissibility would not be permitted was clearly incorrect. In so stating, we intimate no opinion on how the question of cross-admissibility should be resolved if it arises again at trial.

Lack of cross-admissibility alone does not require severance. (*Newman* v. *Superior Court* (1986) 179 Cal.App.3d 377, 383 [224 Cal.Rptr. 538].) However, respondent court found other factors which also supported its order of severance. Noting defendant occupied a position of trust with regard to the students at the high school, respondent court concluded the jury's ire might be aroused by evidence defendant violated that trust on more than one occasion and with more than one student.

Considering the extensive cross-examination and impeachment of Sonia at the preliminary hearing, the court also found that the charges relating to her were weak in comparison to those relating to Sheryl.[2] The court was obviously concerned with the spillover effect which might occur were all the charges united in a single trial.

Respondent court concluded the apparent lack of cross-admissibility, the inflammatory nature of the charges, and the weakness of the charges relating to Sonia, together warranted severance.[3]

---

[2] At the preliminary hearing, Sonia at first denied using any birth control devices during the period of her relationship with defendant. On cross-examination, she conceded she had in fact used birth control devices during that time but insisted she had used no such devices when she slept with defendant and that she was a virgin when she had intercourse with defendant. Sonia admitted on cross-examination that she lied when, after she learned she was pregnant, she told all involved that David P., her then boyfriend, was the father of the baby. Sonia also admitted participating in an extortion scheme on behalf of a friend, Patty T., who apparently had sexual relations with defendant. Sonia testified she called defendant, at Patty's behest, and informed defendant Patty and she would not press charges if defendant paid Patty $2,000 and gave a motorcycle to Patty's boyfriend.

[3] Noting the magistrate made an express finding that Sonia was "credible," the People challenge respondent court's characterization of the charges involving Sonia as "weak." If in fact the magistrate had not deemed Sonia's testimony credible, no holding order could have been issued as to any of the charges involving her. However, respondent court did not substitute its judgment as to the weight of the evidence for that of the magistrate. In ruling on a motion for severance the court was required to evaluate the charges qualitatively on the whole record

The question presented is not whether this court, faced in the first instance with defendant's motion for severance, would have ruled in the same manner as respondent court. Rather, a severance motion lies within the sound discretion of the trial court (*People* v. *Matson* (1974) 13 Cal.3d 35, 39 [117 Cal.Rptr. 664, 528 P.2d 752]) and the exercise of that discretion will not be disturbed by a reviewing court except upon ". . . a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice." (*People* v. *Jordan* (1986) 42 Cal.3d 308, 316 [228 Cal.Rptr. 197, 721 P.2d 79].) Based on the record before respondent court, we cannot say the order to sever counts five and six from the remaining counts was an abuse of discretion.

## II

As a result of a single act of intercourse with defendant, Sonia became pregnant and underwent an abortion. Based on this evidence, the information alleged defendant inflicted great bodily injury (§ 12022.7) during the commission of count three, unlawful sexual intercourse with Sonia (§ 261.5), an allegation the trial court dismissed. (§ 995.)[4]

Section 12022.7 states in relevant part: "Any person who, with the intent to inflict such injury, personally inflicts great bodily injury on any person other than an accomplice in the commission or attempted commission of a felony shall, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he has been convicted, be punished by an additional term of three years . . . ." This section may be applied to any crime except those where serious bodily injury is an element of the substantive charge. (§ 12022.7; *People* v. *Parrish* (1985) 170 Cal.App.3d 336, 344 [217 Cal.Rptr. 700].)

 Pregnancy, abortion, or venereal disease constitute injury significantly and substantially beyond that necessarily present in the commission of an act of unlawful sexual intercourse. (See *People* v. *Johnson* (1986) 181 Cal.App.3d 1137, 1139-1141 [225 Cal.Rptr. 251] [victim who received

and determine whether weak charges had been joined with other weak or stronger charges in order to gauge any prejudice that might result from a joint trial. (*Williams* v. *Superior Court, supra,* 36 Cal.3d at pp. 452-454.) The court met this obligation by reviewing the evidence objectively and assessing whether the People might have greater difficulty proving the charges relating to Sonia as against those relating to Sheryl.

[4] The People may appeal an order dismissing all or part of an information. (§ 1238, subd. (a)(1).) Here, however, such remedy would be inadequate as it would cause piecemeal resolution of the case. Thus, review by way of extraordinary writ is appropriate. (*People* v. *Superior Court (Deardorf)* (1986) 183 Cal.App.3d 509, 513 [228 Cal.Rptr. 137].)

herpes as a result of forcible rape held to have suffered great bodily injury]; *People* v. *Sargent* (1978) 86 Cal.App.3d 148, 151-152 [150 Cal.Rptr. 113] [victim of rape who became pregnant and suffered an abortion held to have suffered great bodily injury].) "Pregnancy cannot be termed a trivial, insignificant matter. It amounts to significant and substantial bodily injury or damage. . . . [¶] Pregnancy can have one of three results—childbirth, abortion or miscarriage. Childbirth is an agonizing experience. An abortion by whatever method used constitutes a severe intrusion into a woman's body. A miscarriage speaks for itself. . . . We [ ] find that the facts in this case, i.e., a pregnancy followed by an abortion, clearly support a finding of great bodily injury." (*People* v. *Sargent, supra,* at pp. 151-152.)

In dismissing the enhancement allegation respondent court, citing *Michael M.* v. *Superior Court* (1979) 25 Cal.3d 608, 611-614 [159 Cal.Rptr. 340, 601 P.2d 572], emphasized the purpose underlying section 261.5 is to prevent teenage pregnancy. Respondent court concluded that to punish defendant for a crime the purpose of which is to prevent pregnancy and then to add an additional three-year punishment because the victim became pregnant, would amount to double punishment for the same act. We reject this analysis because it elevates a purpose underlying the statute defining the crime to an element of the crime itself. Pregnancy is not an element of the crime of unlawful sexual intercourse. (*People* v. *Langdon* (1987) 192 Cal.App.3d 1419, 1421-1422 [238 Cal.Rptr. 158].)⁵ However, if pregnancy results and was specifically intended, a great bodily injury enhancement may be charged and found true. (*People* v. *Sargent, supra,* at pp. 151-152.)

 Section 12022.7 is a specific intent enhancement, an element of which is defendant's intent to cause great bodily injury.⁶ (*People* v. *Simpson*

---

⁵ In *People* v. *Langdon, supra,* defendant showed that he was physiologically incapable of impregnating a female because of a vasectomy, and argued that he therefore could not be convicted of unlawful sexual intercourse. The *Langdon* court rejected this argument, stating: "It does not follow that because one of the purposes of the statute is the prevention of teenage pregnancies, a man is immune from prosecution under the statute because he is unable to impregnate a female. . . . [¶] Although prevention of pregnancy is one purpose of the statute, it may not be the only one. [Citation.] [I]nquiries into legislative motives are hazardous; it is often an elusive search. Legislators may have voted for the statute under consideration here '. . . for a variety of reasons. Some legislators may have been concerned about preventing teenage pregnancies, others about protecting young females from physical injury or from the loss of "chastity," and still others about promoting various religious and moral attitudes towards premarital sex.' [Citation.] If the Legislature desires to carve out defenses for particular classes of people, it is free to do so. We shall not do so by judicial decree. [Citation.]" (192 Cal.App.3d at pp. 1421-1422.)

⁶ Compare section 12022.8, which states: "Any person who inflicts great bodily injury, as defined in Section 12022.7, on any victim in a violation of subdivision (2) or (3) of Section 261, Section 264.1, subdivision (b) of Section 288, Section 289, or sodomy or oral copulation by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the

(1987) 192 Cal.App.3d 1360, 1365-1367 [237 Cal.Rptr. 910].) Defendant contends the evidence at the preliminary hearing is insufficient to show he intended that Sonia become pregnant.

██ "An information will not be set aside or a prosecution thereon prohibited if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it. [Citations.]" (*Rideout v. Superior Court* (1967) 67 Cal.2d 471, 474 [62 Cal.Rptr. 581, 432 P.2d 197].) "In testing the evidence offered to support the prosecution, every legitimate inference that may be drawn from the evidence must be drawn in favor of the information." (*People v. Dickinson* (1976) 59 Cal.App.3d 314, 320-321 [130 Cal.Rptr. 561].)

██ The evidence at the preliminary hearing shows defendant intended to have intercourse with Sonia. Sonia testified she did not use any birth control device. There is no evidence defendant used any birth control device or that he believed Sonia was using any form of birth control. Under the circumstances pregnancy was certainly a possible consequence.

██ Specific intent, like any other element of a crime, must be proved by evidence and the inferences which are reasonably deducible from it; specific intent may not be based on a presumption. (*People v. Snyder* (1940) 15 Cal.2d 706, 708 [104 P.2d 639].) ██ The specific intent at issue here is the intent to impregnate Sonia. Nothing in the record even remotely suggests that defendant consciously desired that Sonia become pregnant. Indeed, if speculation could serve for evidence, the circumstances of this illicit relationship strongly suggest it is far more likely that pregnancy was a consequence defendant devoutly wished would not be consummated. Nor can we say that pregnancy is such a substantial certainty following from a single act of intercourse that defendant's specific intent to bring about that result can be inferred from that act alone. While sexual intercourse (or its artificial equivalent) is essential to human reproduction, it is well known that the prospect that any act of intercourse will result in pregnancy is dependent on the interaction of a number of variables, some of which are

victim or another person as provided in Section 286 or 288a shall receive a five-year enhancement for each such violation in addition to the sentence provided for the felony conviction."

In *People v. Johnson, supra,* which held herpes resulting from an act of forcible rape constituted great bodily injury, a five-year enhancement was imposed under section 12022.8, and thus whether defendant intended to cause injury was irrelevant. (181 Cal.App.3d at pp. 1138, 1140-1141.)

In *People v. Sargent, supra,* where pregnancy as a result of rape was held to constitute great bodily injury, the three-year enhancement, although not specified in the opinion, must have been imposed pursuant to section 12022.7, as section 12022.8 was not enacted until 1979. (86 Cal.App.3d at pp. 150-152; see Stats. 1979, ch. 944, p. 3263.) The issue of specific intent was not raised and therefore not addressed by the *Sargent* court. (See *ibid.*)

beyond the control of the actors. Thus while pregnancy was a possible result of defendant's act, it was neither inevitable nor so practically certain to occur as to give rise to an inference of actual intent. On this record, the most that can be said is that defendant negligently, even recklessly, ignored the possibility that his conduct might lead to pregnancy. However, although both negligence and recklessness are themselves culpable states, neither equates with specific intent. Accordingly, we conclude the trial court did not err in dismissing the great bodily injury enhancement allegation.

## III

Count four of the information charged defendant with violation of section 273a, subdivision (1), felony child abuse, as follows: "[t]hat on or about and between the 1st day September, 1983, and the 25th day of March, 1985, . . . the defendant . . . did willfully, unlawfully, and feloniously, under circumstances likely to produce great bodily harm and death, injure, cause, and permit a child SONIA D., to suffer and to be inflicted with unjustifiable physical pain and mental suffering, and, having the care and custody of said child, injure, cause, and permit the person and health of said child to be injured and did willfully cause and permit said child to be placed in such situation that [her] person and health was endangered." Pursuant to section 995, the court dismissed count four. ▮ The People claim a charge of felony child abuse may be sustained under the facts here presented. We disagree.

Section 273a, subdivision (1) provides: "Any person who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of such child to be injured, or willfully causes or permits such child to be placed in such situation that its person or health is endangered," is guilty of a felony.

A violation of section 273a, subdivision (1), ". . . can occur in a wide variety of situations: the definition broadly includes both active and passive conduct, i.e., child abuse by direct assault and child endangering by extreme neglect. Two threshold considerations, however, govern all types of conduct prohibited by this law: first, the conduct must be willful; second, it must be committed 'under circumstances or conditions likely to produce great bodily harm or death.' (§ 273a, subd. (1).) Absent either of these elements, there can be no violation of the statute." (*People* v. *Smith* (1984) 35 Cal.3d 798, 806 [201 Cal.Rptr. 311, 678 P.2d 886].)

The People's theory is that defendant committed felony child abuse in the course and as a result of his 18-month relationship with Sonia. They argue

mental suffering is a likely result of an affair involving a high school administrator and a troubled student.

While emotional trauma may indeed be a likely result of such an affair, this fact alone does not place such conduct within the ambit of the felony child abuse statute. Under the facts here presented the relationship, up until the final occasion defendant and Sonia were together, included acts of mutual petting and a single consensual act of oral copulation. Such conduct is indeed criminal, but it hardly falls within the category of willful conduct committed ". . . under circumstances or conditions likely to produce great bodily harm or death . . . ." (§ 273a, subd. (1).)

Accordingly, the charge of felony child abuse must be sustained if at all, on the evidence of the single, consensual act of intercourse between defendant and Sonia. Indeed, in holding defendant to answer for felony child abuse, the magistrate expressed particular concern with the emotional trauma resulting from an act of intercourse followed by pregnancy and abortion. The question therefore is whether a consensual act of intercourse alone can sustain a section 273a, subdivision (1) charge. We hold that it may not.

An act of sexual intercourse with a minor teenager may well result in pregnancy, and therefore involves the possibility of great bodily injury. (*Michael M.* v. *Superior Court, supra,* 25 Cal.3d at pp. 611-614; *People* v. *Sargent, supra,* 86 Cal.App.3d at pp. 151-152.) It is also true section 273a, subdivision (1) is concerned with the likelihood of foreseeable injury at the time the conduct occurs, but whether such injury in fact occurs is irrelevant. (See *People* v. *Hernandez* (1980) 111 Cal.App.3d 888, 895 [168 Cal.Rptr. 898].) Therefore, an act of intercourse between two parties so situated satisfies the elements of section 273a, subdivision (1). Nonetheless, to accept the People's assertion that a single, consensual act of sexual intercourse with a minor can support a charge of felony child abuse would mean every act of unlawful sexual intercourse would necessarily be a violation of section 273a. We are satisfied the Legislature did not intend this result. We have found no case where a charge of felony child abuse has been sustained, or even asserted, where the charge was based upon an act of sexual intercourse between an adult and a consenting minor.[7] ▪ The

---

[7] The People's reliance on *People* v. *Todd* (1969) 1 Cal.App.3d 547 [81 Cal.Rptr. 866], is misplaced. In *Todd,* defendant was convicted of rape (§ 261, subd. (1) [where the victim is incapable because of a mental disorder or developmental or physical disability of giving legal consent]), lewd conduct with a child under 14 years of age (§ 288) and child abuse. (§ 273a.) The evidence established the defendant had intercourse with his two-and-one-half-year-old daughter. On appeal, the conviction was reversed due to the trial court's failure to give a limiting instruction for certain hearsay statements. (At p. 549.) No issue was raised with regard to the child abuse conviction on the facts there presented. It is clear, however, that under the facts of *Todd,* the conviction was warranted. As a result of defendant's act of intercourse

lack of any such authority follows from operation of ". . . the rule that a specific statutory provision controls a general one even where the general one standing alone would be broad enough to include the subject matter of the specific statute." (*People* v. *Hawes* (1982) 129 Cal.App.3d 930, 936-937 [181 Cal.Rptr. 456], citing *In re Williamson* (1954) 43 Cal.2d 651, 654 [276 P.2d 593].)

"The *Williamson* rule applies even though the general statute contains elements not found within the specific statute if a violation of the latter necessarily or commonly results in a violation of the former and the overall statutory context indicates a legislative intent that the specific provision shall control the general." (*Hawes, supra,* at p. 937.) "The doctrine that a specific statute precludes any prosecution under a general statute is a rule designed to ascertain and carry out legislative intent. The fact that the Legislature has enacted a specific statute covering much the same ground as a more general law is a powerful indication that the Legislature intended the specific provision alone to apply. Indeed, in most instances, an overlap of provisions is determinative of the issue of legislative intent and 'requires us to give effect to the special provision alone in the face of the dual applicability of the general provision . . . and the special provision. . . .' [Citation.]" (Fn. omitted; *People* v. *Jenkins* (1980) 28 Cal.3d 494, 505-506 [170 Cal.Rptr. 1, 620 P.2d 587].)

The felony child abuse statute was designed to apply in those instances where minors are subjected to acts of cruelty and neglect which might, and often do, result in life threatening harm to the child. (*People* v. *Benway* (1985) 164 Cal.App.3d 505, 511 [210 Cal.Rptr. 530].) Obviously, no minor willingly submits to violence, sexual abuse, starvation or other similar conduct. (See e.g., *id.,* at pp. 507-508 [violence]; *People* v. *Shockley* (1978) 79 Cal.App.3d 669, 673-677 [145 Cal.Rptr. 200] [starvation and neglect]; *Todd, supra,* 1 Cal.App.3d at pp. 550-551 [sexual abuse]; *Hernandez, supra,* 111 Cal.App.3d at p. 893 [extreme cruelty and neglect].)

On the other hand, "[b]y its adoption of section 261.5 the Legislature necessarily acknowledged the obvious truism that minor females are fully capable of freely and voluntarily consenting to sexual relations. If this was not so, the charge brought in these cases would uniformly be one of forcible rape. (§ 261.) The statute makes no statement about [the victim's] ability to consent. Rather, that statute merely prohibits the act of sexual intercourse

with his infant child, the child sustained a tear in the wall of her vagina, requiring hospitalization. An act of intercourse with a child of two and one-half years involves a high probability of both physical pain and injury and constitutes an act of child abuse in its most vile form. By contrast the situation here involved an act of consensual intercourse between an adult and a teenager and is substantially different from *Todd.*

with an underage female not the wife of the perpetrator, rejecting consent as a defense. In this regard section 261.5 is no different than a variety of other statutes which prohibit minors from engaging in certain activities of much less consequence to the minor, no matter how well informed, how knowledgeable and how willing or consenting the minor might be. (E.g., §§ 308 [selling or furnishing tobacco to minor], 310 [minor under 16 may not attend prizefight], 326.5 [no minor may participate in bingo game].)" (*Michael M., supra,* 25 Cal.3d at p. 614.)

Section 261.5 was intended to apply to any act of consensual intercourse between a male of any age and a minor female. In *Michael M., supra,* the statute was upheld despite its "obviously discriminatory classification," because of a compelling state interest requiring the protection of minor females and society's need to prevent unwanted teenage pregnancies. (*Id.,* at p. 611.) If in fact section 273a could be applied to any act of intercourse between a male and teenage female, there would have been no need for the *Michael M.* court to uphold the "obviously discriminatory" unlawful intercourse statute. (See *id.,* at p. 613.)

We hold section 261.5 is the specific statute intended by the Legislature to cover the conduct here involved. As such, this section takes precedence over the more general felony child abuse statute. Respondent court did not err in dismissing count four from the information.

The petition is denied, the stay is vacated and the alternative writ, having served its purpose, is discharged.

Carr, J., and Sparks, J., concurred.