IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 6, 2024

## STATE OF TENNESSEE v. ANTONIO GLOVER

**Appeal from the Criminal Court for Shelby County**
No. 15-05601       Chris Craft, Judge
_____

### No. W2023-00578-CCA-R3-CD
_____

A Shelby County jury convicted the defendant, Antonio Glover, of aggravated rape for which he received a sentence of seventeen years with the Tennessee Department of Correction. On appeal, the defendant contends that the evidence presented at trial was insufficient to support his conviction and that the trial judge in preventing him from impeaching the victim with evidence of the victim's prior sexual history. Following our review, we affirm the defendant's conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which JOHN W. CAMPBELL, SR., and KYLE A. HIXSON, JJ., joined.

Joseph S. Ozment, Memphis, Tennessee, (on appeal) and William L. Johnson and Mozella Ross, Memphis, Tennessee, (at trial) for the appellant, Antonio Glover.

Jonathan Skrmetti, Attorney General and Reporter; Brett C. Cherry, Senior Assistant Attorney General; Steve Mulroy, District Attorney General; and Jeff Jones and Jose Leon, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### Facts and Procedural History

This case arises from an incident occurring between the defendant and the victim at the defendant's home in Shelby County, Tennessee. For his actions, the defendant was charged with aggravated rape, a Class A Felony.

Prior to trial, the defendant filed a Motion to Include Reference to Victim's Sexual Behavior Pursuant to Tennessee Rule of Evidence 412(d). In his motion, the defendant argued that the victim, T.H.,[1] had been seen naked with her cousin in 2012 and that proof of this incident went to the "victim's reputation and conduct regarding her sexual activity," and to the State's intent to offer proof of the victim's infection of Chlamydia from the alleged rape.

On April 7, 2022, the trial court held a hearing on the defendant's motion regarding the victim's alleged prior sexual activity. Shelby Watkins, the defendant's daughter, testified that in 2012 she walked into the defendant's home and saw T.H. and Ms. Watkins' nephew, A.L., under a blanket appearing to be touching each other. When she walked in, T.H. and A.L. ran in opposite directions. Demetria Watkins, another daughter of the defendant, testified that she did not see anything directly, but was present at the house that night. Lastly, the defendant called A.L., who testified that on the night in 2012, he and T.H. had discussed having sex. He and T.H. were "finna get into it, but my aunty came in and caught us." A.L. described the level of intimacy to be "around second or third base." According to A.L., there was no penetration.

The defendant argued that the above testimony called into question T.H.'s credibility because she had told Le Bonheur Children's Hospital that she was not engaged in sexual activity despite the 2012 incident. The defendant argued that evidence of the 2012 incident was, therefore, intended to impeach T.H.'s statement that she was not sexually active. The trial court questioned, and the State agreed, whether the testimony concerning the 2012 event was not being sought by the defendant for Rule 412 purposes, but instead, to attack her credibility with an inconsistent prior statement under Tennessee Rule of Evidence 613. The State further argued with regards to Rule 412(c)(2) that they were not intending to offer any evidence as to the victim's other sexual behavior at trial, and therefore, there would be no need for the defense to rebut that evidence.

Ultimately, the trial court denied the defendant's motion finding that the evidence of the 2012 incident could not be used to impeach the medical findings of Le Bonheur Children's Hospital because, even if the 2012 incident occurred, "sexual penetration was never achieved." Further, even under Rule 613, the incident occurred in 2012, and, therefore, would not be inconsistent with the victim's 2014 statement that she was not sexually active at the time of the rape.

At trial, the State presented the following facts for the jury's review. T.H. testified that on a night in July 2014, she slept at the home of her grandfather, the defendant, along

---

[1] It is the policy of this Court to refer to victims of sexual crimes by their initials. For purposes of this opinion, "the victim" will be referenced as T.H. unless otherwise noted.

with her three sisters. It was common for the victim and the defendant's other grandchildren to spend the night at his home. However, the only room in the home to have air conditioning was the bedroom belonging to the defendant and his live-in girlfriend. Therefore, visitors would usually sleep in the living room. Prior to this night, the defendant and T.H. had a "good relationship."

On this particular night in July, T.H., suffering from pain associated with her menstrual cycle, took a muscle relaxer and laid down on the defendant's bed. She fell asleep and was awoken at some point by the feeling of pain as the defendant penetrated her vagina with his penis. The defendant, using one arm, held T.H. down on the bed and covered her mouth with his other hand. When T.H. was able to free herself, she pulled up her shorts and walked towards the bedroom door. On her way out of the bedroom, the defendant said, "[I]f you tell anyone, I'mma hurt you." T.H. rejoined her sisters in the living room and did not tell anyone what happened because she feared the defendant. T.H. stated that at the time of the rape, she was not otherwise sexually active.

A few weeks later, after an annual physical for basketball season, T.H. learned she had tested positive for Chlamydia and needed to return to see a doctor. Afraid to tell her mother, T.H. told her cousin, Johelen Jackson, that she had been raped by the defendant and, as a result, had tested positive for Chlamydia. Ms. Jackson shared that information with T.H.'s mother, Sylvia Dyson. Ms. Dyson took T.H. to Le Bonheur Children's Hospital for treatment. At Le Bonheur, T.H. was diagnosed with Chlamydia and prescribed antibiotic medication. T.H.'s medical records stated that she had "an infection called Chlamydia," and further defined Chlamydia as a "sexually transmitted disease." The medical records noted that T.H. was "not sexually active."

While still at Le Bonheur, T.H. provided a statement to the responding officer, Officer David Leslie from Memphis Police Department (MPD). Officer Leslie testified that he recorded the initial statement and consulted with his supervising lieutenant. The case was then transferred to Sergeant Jim Byars, who worked specifically with the Child Sex Crimes Unit with MPD. Sgt. Byars, as part of his investigation, contacted the defendant to set up an appointment for him to provide a statement in response to T.H.'s accusation. Sgt. Byars set up multiple appointments with the defendant; however, the defendant failed to show up for any of the appointments. After missing several appointments, the defendant told Sgt. Byars he was intending to obtain an attorney. Sgt. Byars advised the defendant to call him after he spoke with an attorney to inform him if he was going to give a statement. There was not further contact between the defendant and Sgt. Byars.

As part of his proof at trial, the defendant called his daughter, Shelby Watkins. Ms. Watkins testified that her children would also frequently stay at the defendant's home. She

was "pretty close" with the defendant and visited him several times a week. She stated that the defendant's girlfriend, Dorothy Murphy, also lived in the home at the time of the alleged rape, but Ms. Murphy had died prior to trial. On cross-examination, Ms. Watkins clarified she was not at the defendant's home that night nor did she know if Ms. Murphy was at the home.

The defendant testified on his own behalf and stated that his grandchildren would visit and sleep at his home frequently. When not in school, his grandchildren would be at his home "pretty much most of all the summer." Usually, there would be between six and twelve grandchildren present at any time. He had a "pretty good" relationship with T.H., having only minor disagreements. However, the two had a minor disagreement involving T.H. wanting to take clothes from the defendant's home that belonged to her cousin. They also had a disagreement about a cell phone T.H. wanted the defendant to purchase for her.

The defendant claimed that in 2014 he worked two jobs that kept him from the house at night. He worked at the first job from 5:00 pm to 10:15 pm and the second job from 11:00 pm to 8:30 am. On cross-examination, the defendant testified that these jobs were during the week but claimed he would also work weekends.

Concerning the alleged rape, the defendant repeatedly denied the victim's version of events, claiming "it[']s just something that didn't happen." The defendant also disputed the testimony of Sgt. Byars that he had failed to attend the scheduled appointments to provide a statement. The defendant first denied ever setting up a meeting with Sgt. Byars, stating he "never scheduled any kind of meeting." However, the defendant later contradicted himself stating he did not remember if he scheduled appointments with Sgt. Byars.

Following deliberations, a jury found the defendant guilty of aggravated rape. As a result of his conviction, the trial court imposed a sentence of seventeen years in confinement. The defendant filed a motion for acquittal, or in the alternative, a motion for new trial which the trial court denied. This timely appeal followed.

### *Analysis*

On appeal, the defendant argues that the evidence presented at trial was insufficient to support his conviction for aggravated rape. Additionally, the defendant contends that the trial court erred in excluding evidence of the victim's prior sexual history pursuant to Tennessee Rule of Evidence 412. The State argues that the evidence at trial was sufficient for the jury to convict the defendant of aggravated rape and that the trial court properly exercised its discretion when excluding evidence as to the victim's prior history. We agree with the State on both issues.

- 4 -

## I.  Sufficient Evidence Existed to Support the Defendant's Conviction for Aggravated Rape

### a.  Standard of Review

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190–92 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *See State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Our Supreme Court has stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus, the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

### b.  Aggravated Rape under Tenn. Code Ann. § 39-13-502(a)(2)

The defendant contends that the evidence was insufficient to support his conviction for aggravated rape. The aggravated rape statute provides, in pertinent part, as follows, "[A]ggravated rape is unlawful sexual penetration of a victim by the defendant or the

defendant by a victim accompanied by any of the following circumstances: . . . (2) the defendant causes bodily injury to the victim….” Tenn. Code Ann. §39-13-502(a)(2). Aggravated rape is a Class A felony. Tenn. Code Ann. §39-13-502(b). “Bodily injury includes a cut, abrasion, bruise, burn or disfigurement, and physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty.” Tenn. Code Ann. §39-11-106(a)(2).

Here, the defendant argues that “there is no medical proof that Chlamydia is an illness or temporary illness,” and, thus, falls outside the definition of bodily injury. The State contends that sufficient evidence was adduced at trial to show that the victim contracted Chlamydia as a result of the defendant’s penetration, Chlamydia is a disease, and therefore, the victim suffered bodily injury. We agree with the State.

The determination that a sexually transmitted disease is a bodily injury is not entirely foreign to this Court. In *State v. Grissom*, this Court was presented with the issue of whether the transmission of a venereal disease was a personal injury to the victim when considering sentencing enhancement factors. *See State v. Grissom*, No. 02C01-9501-CC-00023, 1996 WL 218213, at *5 (Tenn. Crim. App. May 1, 1996). This Court concluded that the “fact that the defendant infected the victim with venereal disease qualifies the personal injuries to the victim as being particularly great.” *Id.*

We are further persuaded by additional jurisdictions that have found that the transmission of various sexually transmitted diseases constitutes bodily harm. The California Court of Appeals found, “[p]regnancy, abortion or venereal disease constitute[s] injury significantly and substantially beyond that necessarily present in the commission of an act of unlawful sexual intercourse.” *People v. Superior Court (Duval)*, 198 Cal. App. 3d 1121, 1131, 244 Cal. Rptr. 522 (1988). The Ninth Circuit has similarly held the transmission of herpes to a victim of sexual assault constituted an injury. *See United States v. James*, 957 F.2d 679, 680 (9th Cir. 1992); *see also United States v. Reister*, 40 M.J. 666, 669-70 (NMCMR1994) (finding from military tribunal that transmission of herpes was sufficient to satisfy grievous bodily injury requirement).

While the defendant laments the vagueness of the term “temporary illness,” the treatability or gravity of the disease is irrelevant to the immediate question. “It is not the duty of this Court to apply size or degree requirements to such ambiguous legislation.” *State v. Smith,* 891 S.W.2d 922, 928 (Tenn. Crim. App. 1992) (*citing State v. Harris*, 866 S.W.2d 583, 588 (Tenn. Crim. App. 1992) (holding a small bruise on the victim’s hip and tender pelvic area was sufficient to constitute bodily injury for purposes of sufficiency of evidence of aggravated rape)). Therefore, we find the defendant’s argument to be unpersuasive.

It is clear from the record that the State presented sufficient evidence that the defendant infected the victim with Chlamydia, a sexually transmitted disease, and thereby established bodily injury. T.H. testified that she woke to the pain from the penetration of the defendant's penis into her vagina. She further stated that she was not otherwise sexually active at the time of the rape. Ms. Dyson, the victim's mother, testified that the medical professionals at Le Bonheur diagnosed T.H. with Chlamydia and stated that T.H. had been penetrated. Lastly, T.H.'s medical records listed Chlamydia as the diagnosis and defined Chlamydia as a sexually transmitted disease. By its verdict of guilt, the jury chose to accredit the above testimony over that of the defendant. It is not our province to revisit the jury's factual determinations.

Therefore, after considering the evidence in the light most favorable to the State, we conclude that sufficient evidence exists in the record to support the defendant's conviction for aggravated rape.

## II. The Trial Court's Exclusion of Evidence Under Tenn. R. Evid. 412 Was Not An Abuse of Discretion

The second issue on appeal stems from the trial court's denial of the defendant's motion to present proof of the victim's prior sexual behavior pursuant to Tennessee Rule of Evidence 412 and the exclusion of that proof during the cross-examination of the victim. The State contends the trial court correctly ruled to exclude evidence of the victim's prior sexual history. We agree with the State.

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence." Tenn. R. Evid. 401. Irrelevant evidence is not admissible. Tenn. R. Evid. 402. We review the trial court's relevancy determinations for an abuse of discretion. *See State v. DuBose*, 953 S.W.2d 649, 652 (Tenn. 1997); *see also State v. Sheline*, 955 S.W.2d 42, 46 (Tenn. 1997). "A trial court abuses its discretion when it applies an incorrect legal standard, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." *State v. Thirkill*, No. W2016-00335-CCA-R3-CD, 2017 WL 3234365, at *12 (Tenn. Crim. App. July 28, 2017) (*citing State v. Banks,* 271 S.W.3d 90, 116 (Tenn. 2008)).

The defendant argues that the trial court erred by not allowing him to present evidence of the victim's prior sexual activity under Tenn. R. Evid 412. Rule 412, Tennessee's Rape Shield Law, specifically governs the admissibility of evidence concerning a sex crime victim's prior sexual acts. *See State v. Nance*, 393 S.W.3d 212, 223 (Tenn. Crim. App. 2012). Under Tenn. R. Evid. 412(c)(2),

"evidence of specific instances of a victim's sexual behavior is inadmissible unless admitted in accordance with the procedures in subdivision (d) of this Rule, and the evidence is offered by the defendant on the issue of credibility of the victim, provided the prosecutor or victim has presented evidence as to the victim's sexual behavior, and only to the extent needed to rebut the specific evidence presented by the prosecutor or victim."

Under Tenn. R. Evid 412(c)(4)(ii), evidence of specific instances of a victim's sexual behavior may also be admissible "[i]f the sexual behavior was with persons other than the accused, to prove or explain the source of semen, injury, disease, or knowledge of sexual matters." Tenn. R. Evid 412(c)(4)(ii).

Here, the trial court held a pre-trial hearing to determine if the defendant's desired evidence would meet the strict requirements of Rule 412. After hearing the testimony of the defendant's witnesses and the argument of both parties, the trial court found the evidence to be irrelevant to the instant matter because it occurred two years prior to the alleged rape and because there was no penetration during the 2012 incident. Because of the temporal disparity and the lack of penetration, the defendant's desired evidence was irrelevant to the victim's contraction of Chlamydia in 2014. In addition, the trial court found that the 2012 incident would not impeach any statement by the victim that she had not been engaged in sexual activity at or near the time of the alleged rape in 2014. During its ruling at the hearing, the trial court left open the possibility of allowing the proposed evidence if the State opened the door by eliciting testimony of the victim's sexual behavior prior to the alleged rape in 2014.

As it relates to the trial court's determination at the pretrial hearing, the record reflects that the trial court carefully considered the proposed evidence in light of the requirements of Rule 412. Therefore, absent an abuse of discretion, we are bound by the decision of the trial court. The defendant is not entitled to relief on this issue.

The defendant also argues that the trial court erred by excluding the desired evidence during the cross-examination of T.H., claiming the State "opened the door." The defendant avers that the State opened the door when it asked T.H., "[A]t this point in time, were you engaged in sexual activities with anybody," and the victim responded "no." The defendant claims that this testimony contradicted the evidence proposed in the pretrial hearing concerning the victim's 2012 interaction with A.L. However, the trial court found, and we agree, that the State's questioning was clearly limited to sexual activity that was contemporaneous to the time of the alleged rape in 2014. The State's question does not appear to ask about any prior sexual activity. The evidence of the 2012 incident did not impeach the victim's testimony that she was not engaged in sexual activities at the time of the 2014 rape. Therefore, the trial court did not abuse its discretion when ruling that the

2012 incident was irrelevant and, therefore, inadmissible.  The defendant is not entitled to relief on this issue.

## *Conclusion*

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
J. ROSS DYER, JUDGE